

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00047-CV

BBVA COMPASS INVESTMENT                                    APPELLANTS
SOLUTIONS, INC.; DORIS G.
SILVA; KAREN L. MCROBERTS;
MARIO RAMOS; AND DAVID S.
NEEL, JR.

V.

EDWARD BROOKS AND GENEVA                                    APPELLEES
BROOKS

----------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 236-260857-12

----------

## OPINION

----------

The trial court denied Appellants' motion to stay proceedings and compel arbitration. In one issue, Appellants argue the trial court erred in doing so. We agree, reverse the trial court's order, and remand the cause for further proceedings consistent with this opinion.

## Factual Background

Edward and Geneva Brooks, appellees, maintained an IRA with BBVA Compass Investment Solutions, Inc. (Compass). In August 2010, Compass transferred all of the Brookses' money into the account of Ethel Delores Williams and closed their account. When the Brookses discovered the error, they assert Compass told them an unidentified person claimed Edward Brooks was deceased and presented a power of attorney to transfer the money out of the IRA. The Brookses' efforts to resolve the matter to their satisfaction failed, and on August 16, 2012, they filed suit and thereafter amended their petition several times. Compass does not concede these facts as true, but Compass does concede that for purposes of the motion to compel arbitration, the Brookses' allegations are to be taken as true.

## The Parties

In the Brookses' "Second Amended Petition," which was their live pleading at the time of the hearing on the motion to compel arbitration, they identified the defendants as Compass; Pershing, LLC (Pershing); Doris G. Silva; Karen L. McRoberts; Mario Ramos; David S. Neel, Jr.; Williams; and John Doe. Compass identified Silva, McRoberts, Ramos, and Neel as its employees. All references to "Appellants" are to Compass, Silva, McRoberts, Ramos, and Neel. Pershing is identified in Appellants' brief as the clearing firm and custodian of the Brookses' IRA account. Pershing was originally an appellant as well, but it subsequently dismissed its appeal. In their "Third Amended Petition," the Brookses identified

2

Williams as the person into whose account their money was transferred. Williams is not a party to the appeal. The Brookses identified John Doe simply as "an unidentified individual" and dropped him from their "Third Amended Petition." In any event, John Doe is not a party to the appeal.

## Procedural Background

The Brookses filed their original petition on August 16, 2012. Appellants filed their answer on September 17, 2012, and asserted the dispute was subject to arbitration. Pershing and Williams filed separate answers. The Brookses filed their "First Amended Petition" on October 3, 2012.

On November 9, 2012, Appellants and Pershing filed a joint "Motion to Stay Proceedings and Compel Arbitration." On January 4, 2013, the Brookses filed their "Second Amended Petition" in which they alleged seventeen separate claims for relief. Among the claims, the Brookses alleged a breach of contract. On January 8, 2013, the Brookses filed their "Response and Objections to Defendants' Motion to Stay Proceedings and Compel Arbitration." On January 9, 2013, Appellants and Pershing filed a reply in support of their motion to compel arbitration. The Brookses filed a sur-reply on January 23, 2013.

The hearing on the motion to compel arbitration was on January 25, 2013, and consisted only of argument of counsel. At the conclusion of the hearing, the trial court denied the motion without stating its reasons. On the same date the trial judge signed a written order denying the motion. The written order provides no explanation for the ruling either.

3

**Appellants' Motion to Strike[1]**

As a preliminary matter, we address Appellants' motion to strike some of the exhibits attached to the Brookses' brief. Specifically, they complain about the exhibits attached as Tabs 3, 4, 5, 6, 7, 8, 9, 11, 12, and 13 to the Brookses' brief. For the reasons that follow, we grant Appellants' motion.

Appellants object to Tab 4, which contains the Brookses' Fourth Amended Petition, because the Brookses filed their Fourth Amended Petition after the trial court ruled and is, therefore, irrelevant. The trial court denied Appellants' motion to stay proceedings and compel arbitration on January 25, 2013. The Brookses filed their Fourth Amended Petition on February 22, 2013. We note further that the Brookses' Fourth Amended Petition does not appear in the clerk's record. We grant Appellants' motion to strike Tab 4 of the Brookses' brief.[2]

Appellants object to Tabs 3, 5, 6, 7, 8, 9, 11, 12, and 13 because they contain documents that are outside the record. An appellate court cannot look outside the record but is bound to determine the case on the record filed. *See Quorum Int'l v. Tarrant Appraisal Dist.*, 114 S.W.3d 568, 572 (Tex. App.—Fort Worth 2003, pet. denied). Appellants are correct. The exhibits attached to those Tabs to the Brookses' brief are not otherwise part of the clerk's record or the

---

[1]Pershing joined the motion to strike, but, as noted earlier, Pershing subsequently dismissed its appeal.

[2]The Brookses filed a "Third Amended Petition" on January 29, 2013, that is part of the clerk's record. As it post-dates the hearing, it does not impact this appeal.

reporter's record. We grant Appellants' motion to strike Tabs 3, 5, 6, 7, 8, 9, 11, 12, and 13 attached to the Brookses' brief.

## The Arbitration Provision

Paragraph 19 of the brokerage agreement provides, in relevant part:

> (e) . . . You agree that, except as provided below, all controversies which may arise between you and Compass, its affiliates, officers, directors, employees, representatives, and agents concerning the construction, performance or breach of this agreement, agreements related hereto, or any transaction involving securities and/or your securities account, whether entered into prior to, or subsequent to the date hereof, shall be resolved by arbitration in accordance with the Code of Arbitration Procedure of the National Association of Securities Dealers ("CAPNASD") or, if the CAPNASD is unavailable for any reason, the rules of procedure of the American Arbitration Association.

(Original all in capital letters.) Although Silva, McRoberts, Ramos, and Neel were nonsignatories, Appellants argue they were subject to the arbitration provisions as Compass's "agents."

## Standard of Review Generally

A party seeking to compel arbitration must show that the claims at issue (1) are subject to a valid arbitration agreement and (2) fall within the scope of that agreement. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *Aldridge v. Thrift Fin. Mktg., LLC.*, 376 S.W.3d 877, 882 (Tex. App.—Fort Worth 2012, no pet.); *In re Trammell*, 246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, orig. proceeding). Federal and state law strongly favor arbitration. *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding) (per curiam); *Wee Tots Pediatrics, P.A. v. Morohunfola*, 268 S.W.3d 784, 790 (Tex.

5

App.—Fort Worth 2008, orig. proceeding). Appellate courts review a trial court's denial of a motion to compel arbitration for an abuse of discretion. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 494 (Tex. App.—Dallas 2011, pet. denied); *New Hampshire Ins. Co. v. Magellan Reinsurance Co.*, No. 02-12-00196-CV, 2013 WL 1830349, at *3 (Tex. App.—Fort Worth May 2, 2013, no pet.) (op. on reh'g).

## Appellants' Arguments

Appellants' contend the trial court erred by denying their motion to compel arbitration because the agreement was broad enough to encompass all controversies between the parties concerning the performance of the agreement. They contend that the application is straightforward but that the trial court simply ignored it.

## The Brookses' Arguments

The Brookses argue the trial court properly denied Appellants' motion to compel arbitration because the scope of the arbitration clause does not encompass Appellants' tortious conduct and because the contractual relationship between the parties ended once Appellants liquidated and closed the account. The Brookses contend the arbitration clause is limited to disputes involving the purchase, sale, and clearance of securities. The Brookses assert their claims are tort claims, such as coercion, intentional misrepresentations, DTPA violations, and conversion, which occurred after the liquidation of the brokerage

6

account.  They maintain their tort claims arose independently of the brokerage agreement.  The Brookses explained their position at trial to the judge as follows:

> Now, we can step back and say, the wrongful transfer is a breach of fiduciary duty.  It's a breach of contract.  That falls within the arbitration agreement.  We concede that.[3]  It's everything that comes afterwards that has nothing to do with the arbitration agreement.
> And I would submit to Your Honor that a boilerplate arbitration agreement does not contemplate the violation of criminal statutes.  It doesn't contemplate deliberate fraud.  It doesn't contemplate conversion.  And it doesn't contemplate coercion.  All of which we claim in this case, Your Honor.

The Brookses concluded their trial arguments as follows:

> Finally, Your Honor, I'll just point this out.  There would be no question.  If [Appellants] had reached into Mr. Brooks's back pocket and stolen a check out of it, there would have been no question but that that action was not part of an arbitration agreement.  Your Honor, I submit to you, there's absolutely no difference in what [Appellants] and Pershing did in this case versus the scenario I gave you.

The Brookses argue Appellants terminated the account but retroactively attempt to benefit from the arbitration clause found in the terminated contract.  The Brookses contend the conduct about which they are complaining occurred when the parties had no contract whatsoever.

---

[3]The Brookses' position on whether their breach of contract claim is subject to arbitration has varied.  During the trial court hearing, the Brookses conceded the breach of contract claim fell within the arbitration agreement.  In the Brookses' written response to Appellants' motion to compel arbitration that they filed in the trial court, they stated that the transfer of the money out of the account with its ensuing violations of fiduciary and contractual duties were breaches "[a]rguably" subject to arbitration.  Most recently, in their sur-reply brief filed here on appeal, the Brookses contend the breach of contract claim is not subject to arbitration because the arbitration clause is unconscionable.

7

**Arbitration Clause Survives Termination or Repudiation of Contract**

An agreement to arbitrate contained within a contract survives the termination or repudiation of the contract as a whole. *See Dish Network L.L.C. v. Brenner*, Nos. 13-12-00564-CV, 13-12-00620-CV, 2013 WL 3326640, at *7 (Tex. App.—Corpus Christi June 27, 2013, no pet.) (mem. op.); *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 854 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd); *Henry v. Gonzalez*, 18 S.W.3d 684, 690 (Tex. App.—San Antonio 2000, pet. dism'd); *In re Koch Indus., Inc.*, 49 S.W.3d 439, 445 (Tex. App.—San Antonio 2001, orig. proceeding); *Dallas Cardiology Assocs., P.A. v. Mallick*, 978 S.W.2d 209, 213 (Tex. App.—Texarkana 1998, pet. denied). An arbitration agreement within a written contract is separable from the entire contract. *See Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 932 (Tex. App.—Houston [1st Dist.] 1996, no writ). Because the arbitration clause survived, the question turns to the scope of the arbitration provision.

**Scope Generally**

When determining whether a claim is within the scope of an arbitration agreement, courts focus on the factual allegations of the complaint rather than the legal causes of action asserted. *McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Whether a claim is subject to arbitration turns on its substance; parties cannot evade an arbitration clause through artful pleading. *Trammell*, 246 S.W.3d at 820. A strong presumption favors arbitration, and courts resolve any doubts about an agreement's scope,

8

waiver, and other issues unrelated to its validity in favor of arbitration. *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) (per curiam). Unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, a court should not deny arbitration. *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding). Whether a claim falls within the scope of an arbitration agreement involves the trial court's legal interpretation of the agreement and is subject to de novo review. *Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC*, 301 S.W.3d 879, 884 (Tex. App.—Beaumont 2009, no pet.); *McReynolds*, 222 S.W.3d at 740. When reviewed de novo, appellate courts give absolutely no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

### Scope as Contractual Interpretation

Whether an arbitration agreement imposes a duty to arbitrate a particular dispute is a matter of contractual interpretation and a question of law for the court. *The Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 229–30 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Courts examine the language in an arbitration agreement in context and give the language its plain grammatical meaning. *In re Wachovia Sec., LLC*, 312 S.W.3d 243, 247 (Tex. App.—Dallas 2010, orig. proceeding). When construing a contractual provision, the provision is reviewed in light of the entire contract. *See Clark v. Cotton Schmidt, L.L.P.*, 327 S.W.3d 765, 772–73 (Tex. App.—Fort Worth 2010, no pet.).

9

Appellants contend that the arbitration language is broad and covers the complained-of conduct alleged by the Bookses, that the relationship between the Brookses and them arises solely as a result of their agreement, and that, consequently, all interactions between them necessarily occurred as part of the Appellant's performance or nonperformance of the agreement. The Brookses contend the only purpose of the contract was to establish an account for the purchase or selling of stocks and bonds. The Agreement provides:

> This Agreement authorizes Compass Brokerage, Inc. (Compass) . . . to establish an account (Securities Account) and to purchase and sell, as your agent, stocks, options, bonds, and other securities (Securities) without recourse, solely upon your order and for your account as customer, and in accordance with the terms and conditions of this Agreement.

The Brookses then emphasize the language in the arbitration clause that it encompasses "transactions involving securities and/or your securities account" and argue that their claims are not from any such transactions but are for conduct not covered by the clause.

We agree with Appellants. The purpose of the agreement was not to establish an account "*to*" purchase and sell securities. The purpose was to establish an account "*and*" to purchase and sell securities. Transactions involving securities were listed as one of the things the arbitration clause in the agreement covered. They were not, however, listed as the only thing the arbitration clause covered. The Brookses read the arbitration clause as limited to controversies concerning "any transactions involving securities," but they

10

overlook the disjunctive "or" that precedes the quoted language. The arbitration clause, as noted above, was not limited to security transactions but applied to "all controversies . . . concerning the construction, performance or breach of this agreement, agreements related hereto, *or* any transaction involving securities and/or your securities account." (Emphasis added.) The Brookses acknowledged at trial that the wrongful transfer was what started this dispute. The unauthorized transfer of the Brookses' money would appear to be a breach of their agreement; consequently, all of Appellants' subsequent conduct about which the Brookses complain fall within the plain language of the clause that encompassed "all controversies . . . concerning . . . the performance or breach of the agreement."

## Whether Claims Other than Contractual Ones are Within Scope

The Brookses assert tort claims are generally not subject to arbitration. *See Hearthshire Braeswood Plaza Ltd. P'ship, SMP v. Bill Kelly Co.*, 849 S.W.2d 380, 391 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (stating "causes of action sounding in tort are not automatically exempted from arbitration"); *In re Computer Components Corp.*, No. 05-99-01289-CV, 1999 WL 1212163, at *2 (Tex. App.—Dallas 1999, orig. proceeding) (not designated for publication) ("Tort claims are generally not subject to arbitration, but also are not automatically exempt from it."). They assert state court claims in tort are exempt from arbitration if liability arises from general obligations imposed by law that would

11

exist whether there was an agreement or not. *See generally In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding).

The Brookses rely on *Fridl v. Cook*, 908 S.W.2d 507 (Tex. App.—El Paso 1995, writ dism'd w.o.j.). In *Fridl*, the plaintiff contracted with the defendant to market the defendant's company's products, but thereafter the defendant allegedly diverted the business the plaintiff generated to another one of his companies and thereby avoided paying the plaintiff his commissions. *Id.* at 509–14. The arbitration clause in that case encompassed "[a]ny and all controversies, disputes or claims arising out of or relating to this Agreement or a breach thereof." *Id.* at 509. The court wrote that the alleged fraud claim was not linked to any contractual breach because the defendant and the defendant's company with which the plaintiff contracted could have honored their contractual obligations "in every respect" and yet been liable for fraudulently inducing the plaintiff to obtain business for a business outside the contract, so the court ruled the claim arose outside the contract. *Id.* at 513. *Fridl* is distinguishable. The Brookses' claims are both direct and collateral results of Appellants' alleged breach of their contractual agreement with the Brookses.

The Brookses also rely on *Computer Components Corp.* for the proposition that a conversion claim can be maintained without reference to the contract. Regarding tort claims, the court wrote: "Tort claims are generally not subject to arbitration, but also are not automatically exempt from it." *Computer*

12

*Components Corp.*, 1999 WL 1212163 at *2 (citing *Hearthshire Braeswood*, 849 S.W.2d at 391). The court continued:

> In deciding if the tort should be sent to arbitration with the contractual claims, the court must determine if the tort claim is 'so interwoven with the contract that it could not stand alone or, on the other hand, is a tort completely independent of the contract that it could be maintained without reference to the contract.'

*Id.* (quoting *Hearthshire Braeswood*, 849 S.W.2d at 391). The court concluded:

> In the present case, the conversion claim is one which could be maintained without reference to the contract and independent of the contract. Therefore, we conclude the conversion claim is not so interwoven with the contract claim as to require it to be submitted to arbitration with the contract claim.

*Id.* In *Computer Components*, the contract in question was an employment contract. *Id.* at *1. Although not entirely clear, the employee, while employed, apparently converted some property in which Computer Components had a security interest. *Id. Computer Components* is distinguishable. The converted property in *Computer Components* was not the subject of the contract. In contrast, the Brookses' property was the very subject of their contract with Compass.

In another case, Sun Communications, Inc. (Sun) and Financial Services Plus, Inc. (FSP) entered a services contract containing an arbitration agreement. *In re Sun Communications, Inc.*, 86 S.W.3d 313, 316 (Tex. App.—Austin 2002, orig. proceeding) (per curiam). When a dispute arose, FSP sued Sun for conversion and breach of fiduciary duty, both of which were torts, but did not sue Sun for breach of contract. *Id.* When Sun filed a motion to compel arbitration,

13

FSP argued its dispute arose entirely outside any contractual relationship between the parties; the trial court denied Sun's motion. *Id.* at 316–17. The court wrote, "If a dispute is 'factually intertwined' with arbitrable claims, the parties should be compelled to arbitrate their dispute even if the dispute is grounded in a legal theory distinct from a breach of contract claim." *Id.* at 318 (citing *Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992) (orig. proceeding)). The court continued, "[W]e determine whether the facts alleged in support of the tort claim, standing alone, are independent of the contract and whether the tort claim could be maintained without reference to the contract." *Id.* The court ruled that because FSP's claims rested on reports required under the contract, its claims were inextricably intertwined with the contract; hence, the trial court abused its discretion by refusing to grant Sun's motion to compel arbitration. *Id.* at 319–20.

*Sun Communications* is instructive. FSP appeared to have deliberately avoided any breach of contract claim and framed its claims strictly in tort to avoid the arbitration clause in the contract. In *Sun Communications*, the court looked to see if the tort claims could nevertheless be maintained without reference to the contract and determined they could not, so the claims were subject to the arbitration clause. Here the Brookses alleged a breach of contract. However, the Brookses asked the trial court to look only at everything that came after the breach. The Brookses' claims similarly cannot be maintained without reference to the agreements with Compass. But for Compass's transferring the Brookses'

14

money out of their account and subsequently closing their account, there would be no dispute. *See In re Conseco Fin. Servicing Corp.*, 19 S.W.3d 562, 570 (Tex. App.—Waco 2000, orig. proceeding) ("Absent the contract, there would be no relationship between [the parties], and there would have been no debt the collection of which caused the difficulty between them.").

In *Hearthshire Braeswood*, the court held that it was possible to pursue the tort claim regarding one project (the Landing project) without mentioning the other project, for which there were contracts (the Gardens contracts). *Hearthshire Braeswood*, 849 S.W.2d at 391. The court overruled the attack on the trial court's order refusing to compel arbitration of the Landing project claim. *Id. Hearthshire Braeswood* does not help the Brookses. Before the Brookses can get any relief on their tort claims complaining of Appellants' actions after the liquidation of their account, they will first have to establish they had an account with Compass and that Appellants liquidated that account without their authorization.

In a previous case, we have held that the following clause, which was virtually identical substantively to the one in this case, brought the plaintiff's tort claims within the scope of the arbitration clause:

> <u>any and all controversies which may arise</u> between the Firm, any of [the] Firm's employees or agents and Client *concerning any account, transaction, dispute or the construction, performance or breach of this or any other agreement*, whether entered into prior, on or subsequent to the date hereof, <u>shall be determined by arbitration</u>.

15

*UBS Fin. Servs., Inc. v. Branton*, 241 S.W.3d 179, 186 (Tex. App.—Fort Worth 2007, orig. proceeding) (underlined emphasis in original; emphasis in italics added). Other courts have construed language in arbitration provisions to encompass tort claims. *See, e.g.*, *New Hampshire Ins. Co.*, 2013 WL 1830349, at *4 (holding court could not conclude with positive assurance that other-than-contractual claims did not require—or at a minimum touch on in some way—the interpretation of the contract); *Graham-Rutledge & Co. Inc. v. Nadia Corp.*, 281 S.W.3d 683, 690–91 (Tex. App.—Dallas 2009, no pet.) (compelling arbitration of fraud and other tort claims based on an arbitration clause covering "[a]ny controversy or claim *relating to* this contract"); *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 197 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (compelling arbitration of subsequent transaction for financing vehicle because financing would not have occurred without vehicle sales agreement, which contained an arbitration provision encompassing "'[a]ny controversy or claim arising out of or relating to' the Purchase Agreement"); *Conseco Fin. Servicing Corp.*, 19 S.W.3d at 570 (holding that broad arbitration provision, "'[a]ll disputes, claims or controversies arising from or relating to' the contract," encompassed even tort and DTPA claims not based on the formation, negotiation, terms, or performance of contract); *Dallas Cardiology Assocs., P.A.*, 978 S.W.2d at 215 (relying on broad arbitration clause, "[a]ny dispute arising over the terms and conditions of this [a]greement," to send tort claims to arbitration because it could not be said with positive assurance that the particular dispute was not covered);

16

*Am. Emp'rs' Ins. Co. v. Aiken*, 942 S.W.2d 156, 160 (Tex. App.—Fort Worth 1997, no writ) ("Here, the contract included the agreement to arbitrate *any dispute* arising in connection with nonperformance of the contract. And a dispute arising out of a contractual relationship may give rise to both breach of contract and tort claims at the same time because the breach of a duty owed under the contract may involve tortious conduct."); *Sw. Health Plan, Inc. v. Sparkman*, 921 S.W.2d 355, 358 (Tex. App.—Fort Worth 1996, no writ) ("Sparkman complains that appellants breached their contractual duty to provide for Tyson's medical expenses, and Sparkman's claims for fraud, fraudulent concealment, misrepresentation, bad faith, DTPA violations, and violations of the Texas Insurance Code all relate to the contractual dispute. As a result, they are subject to arbitration." (Citation omitted.)).

We do not find the Brookses' analogy to Compass taking money out of the back pocket of Mr. Brooks persuasive. Any money taken out of Mr. Brooks's back pocket would not have been money Appellants were holding in an account pursuant to a contract between Appellants and Mr. Brooks. All the damages in dispute here arose as a consequence of Appellants' alleged payment of all the sums within the Brookses' account with Compass to a third party, the liquidation of the Brookses' account at Compass, and Appellants' subsequent failed attempts to make the Brookses whole to their satisfaction.

Resolving any doubts about the scope of the arbitration agreement in favor of arbitration, and holding it cannot be said with positive assurance that the

17

arbitration clause does not encompass the dispute in question, we agree with Appellants that all of the Brookses' claims, even those not based on the contract, are within the scope of the arbitration provision. *See Ellis*, 337 S.W.3d at 862; *Prudential Sec. Inc.*, 909 S.W.2d at 899.

**Unconscionable Provisions Generally**

Appellants contend that the Brookses argued the arbitration provision was substantively unconscionable by claiming the arbitration costs were so high they were oppressive and, additionally, procedurally unconscionable by claiming unfair surprise because, at the time of the agreement, the Brookses could not anticipate Appellants' alleged future wrongdoing. Texas recognizes provisions can be both substantively and procedurally unconscionable. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) (orig. proceeding). Whether a provision is substantively unconscionable depends on the fairness of the provision itself; whether a provision is procedurally unconscionable depends on the circumstances surrounding the adoption of the provision. *Id.* Whether a valid arbitration agreement exists is a legal question subject to de novo review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Aldridge*, 376 S.W.3d at 882.

A trial court's decision concerning whether an arbitration agreement is unconscionable is reviewed for an abuse of discretion. *Olshan Found. Repair Co. v. Ayala*, 180 S.W.3d 212, 214 (Tex. App.—San Antonio 2005, pet. denied). Because a trial court has no discretion to determine what the law is or apply the

18

law incorrectly, its failure to properly analyze or apply the law constitutes an abuse of discretion. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 349 (Tex. 2008) (orig. proceeding). "[T]he basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (orig. proceeding). The principle is designed to prevent unfair surprise and oppression, but it is not designed to disturb the allocation of risks because of superior bargaining power. *Id.*

## Not Substantively Unconscionable

A complaint of the prohibitive cost of arbitration is a claim that asserts the provision is substantively unconscionable. *Olshan Found. Repair Co.*, 328 S.W.3d at 892. The party opposing arbitration bears the burden to prove the costs of arbitration render it unconscionable. *Id.* at 893. The Brookses, relying on the affidavit of Geneva Brooks, argue the costs of arbitration would be so high as to be unconscionable. The Brookses argue that because there was no objection to Geneva Brooks' affidavit and because Appellants offered no evidence controverting her affidavit, her affidavit was sufficient.

On January 8, 2013, the Brookses filed their "Response and Objections to Defendants' Motion to Stay Proceedings and Compel Arbitration." Attached to this response was the "Affidavit of Geneva Brooks." In her affidavit, Geneva Brooks stated, "Arbitration would impose a financial burden on my husband and

19

me. The arbitration agreement requires us to follow one set of rules for the arbitration with Compass, and a separate set of rules for the arbitration with Pershing. This will make arbitration less efficient and much more costly." Appellants disputed Geneva Brooks's assertion that two sets of rules would apply, asserted her affidavit was conclusory and insufficient under *Olshan*, and maintained she was not qualified to offer an opinion. We do not have to resolve all these issues. We hold Geneva Brooks's affidavit is insufficient evidence under *Olshan*.

"[F]or evidence to be sufficient, it must show that the plaintiffs are likely to be charged excessive arbitration fees." *Id.* at 895. Nothing in Geneva Brooks's affidavit states that the arbitration fees would be excessive. "[P]arties must at least provide evidence of the likely cost of their particular arbitration, through invoices, expert testimony, reliable cost estimates, or other comparable evidence." *Id.* Nothing in Geneva Brooks's affidavit remotely approaches the likely cost of arbitration. "Evidence that merely speculates about the risk of possible cost is insufficient." *Id.* Geneva Brooks's affidavit does not even go so far as to speculate. "[A] comparison of the total costs of the two forums [(arbitration and litigation)] is the most important factor in determining whether the arbitral forum is an adequate and accessible substitute to litigation." *Id.* at 894–95. Geneva Brooks's affidavit provides no basis for comparing the two forums. "Other factors include the actual cost of arbitration compared to the total amount of damages the claimant is seeking and the claimant's overall ability to pay the

20

arbitration fees and costs." *Id.* at 895. Geneva Brooks's affidavit provides no basis by which to determine the actual cost of arbitration compared to the total amount of damages sought and, further, no basis by which to determine the Brookses' overall ability to pay the arbitration fees and costs. "[T]hese considerations are less relevant if litigation costs more than arbitration." *Id.* Because there is no basis to compare litigation costs to arbitration costs, it is not possible to know how to weigh the evidence, even if some evidence of the costs of arbitration had been presented. In short, the record contains no specific evidence that the Brookses will actually be charged excessive arbitration fees, and, therefore, there is no legally sufficient evidence that such fees prevent the Brookses from effectively pursuing their claim in the arbitral forum. *See id.* at 897.

**Not Procedurally Unconscionable**

The circumstances surrounding the adoption of the arbitration agreement determine whether the provision is procedurally unconscionable. *Id.* at 892. Whether a contract is unconscionable or contrary to public policy at the time it is formed is a question of law. *Poly-Am., L.P.*, 262 S.W.3d at 349.

The Brookses contend Edward Brooks could not have foreseen Appellants' conduct when he signed the brokerage agreement. The Brookses assert Appellants' conduct constituted oppression and unfair surprise and invalidates the arbitration clause.

21

Appellants argue that the Brookses' surprise at subsequent events does not render an arbitration clause procedurally unconscionable. Appellants stress that whether a provision is procedurally unconscionable depends on the circumstances surrounding the adoption of the arbitration provision. *Olshan Found. Repair Co.*, 328 S.W.3d at 892. Situations that are procedurally unconscionable involve those in which one of the parties was incapable of understanding the agreement without assistance, and the other party did not provide that assistance, such as where one of the parties was functionally illiterate or where one of the parties did not speak English. *Superbag Operating Co. v. Sanchez*, No. 01-12-00342-CV, 2013 WL 396247, at *6 (Tex. App.— Houston [1st Dist.] Jan. 31, 2013, no pet.) (mem. op.) (citing *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 377 (Tex. App.—Texarkana 1999, orig. proceeding) (involving functional illiteracy); *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937, 940–41 (S.D. Tex. 2001) (involving language barrier)).

We agree with Appellants. Subsequent events do not retroactively make an agreement procedurally unconscionable. The focus is on the time the agreement is entered. *See Olshan Found. Repair Co.*, 328 S.W.3d at 892; *In re Halliburton*, 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding), *cert. denied*, 537 U.S. 1112 (2003). The Brookses are not arguing they were not capable of understanding the agreement, were functionally illiterate, or could not read or speak English.

**Conclusion**

22

We sustain Appellants' point of error in which they asserted the trial court erred by denying their motion to compel arbitration.  We reverse the trial court's order and remand the cause to the trial court for proceedings consistent with this opinion.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  February 12, 2015