

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00191-CV

———————————————

NICHOLS FORD, LTD. D/B/A AUTONATION FORD SOUTH FORT WORTH,
AND TRUIST BANK F/K/A SUNTRUST BANK, Appellants

V.

MARK GARZA AND STEPHANIE GARZA, Appellees

---

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-315652-20

---

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

## I. Introduction

In this accelerated interlocutory appeal, *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.016, Appellants Nichols Ford, Ltd. d/b/a AutoNation Ford South Fort Worth and Truist Bank f/k/a SunTrust Bank appeal the trial court's denial of their motions to compel arbitration. We reverse and remand.

## II. Background

Appellees Mark and Stephanie Garza signed or initialed each page of a "Motor Vehicle Retail Installment Sales Contract–Simple Finance Charge (With Arbitration Provision)" while financing their purchase of a new 2019 Ford F-250 pickup truck from AutoNation. *See* 7 Tex. Admin. Code § 84.807(44) (Office of Consumer Credit Comm'r, Motor Vehicle Installment Sales) (allowing an arbitration provision to be included in a motor vehicle installment sales contract). The arbitration provision referenced in the six-page contract's title was set out on the last page of the contract and states, in pertinent part,

ARBITRATION PROVISION
PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY

HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

. . . Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) [(FAA)] and not by any state law concerning arbitration. . . .

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. . . . If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. . . .

On the contract's preceding page, the Garzas also signed a statement acknowledging that they had received a completed copy of the contract. That provision stated,

**YOU AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT,**

**INCLUDING THE ARBITRATION PROVISION ON PAGE 6, BEFORE SIGNING BELOW**.

During the transaction, the Garzas also signed a separate, stand-alone document entitled "ARBITRATION AGREEMENT." That agreement states that they and the dealership agreed that neutral and binding arbitration under the FAA would be the sole method of resolving any claim, dispute, or controversy that either party had arising from the "purchaser/dealership" dealings (with the sole exception—as set out in the previous agreement—for small claims court) and set out a nonexclusive list of claims to which it would apply:

> (1) Claims in contract, tort, regulatory, statutory, equitable, or otherwise; (2) Claims relating to any representations, promises, undertakings, warranties, covenants or service; (3) Claims regarding the interpretation, scope, or validity of this Agreement, or arbitrability of any issue; (4) Claims between you and the Dealership; and (5) Claims arising out of or relating to your application for credit, this Agreement and/or any and all documents executed, presented or negotiated during Purchaser/Dealership Dealings, or any resulting transaction, service, or relationship, including that with the Dealership, or any relationship with third parties who do not sign this Agreement that arises out of the Purchaser/Dealership Dealings.

In the middle of the page, in bold and capital letters, the agreement stated,

> **BY ENTERING INTO THIS AGREEMENT, YOU GIVE UP YOUR RIGHT TO HAVE DISPUTES DECIDED IN COURT (OTHER THAN SMALL CLAIMS COURT) OR BY A JURY. YOU UNDERSTAND THAT DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A COURT ACTION, AND OTHER RIGHTS THAT YOU MAY HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION. YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN AN ACTION AGAINST THE DEALERSHIP ON A CLASS, REPRESENTATIVE OR OTHER**

**SIMILAR BASIS (COLLECTIVELY, "CLASS ACTION"), INCLUDING ANY RIGHT TO CLASS ARBITRATION OR CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

AutoNation assigned the purchase contract to SunTrust Bank. When the Garzas subsequently sued AutoNation and SunTrust, alleging breach of contract and violations of the Deceptive Trade Practices Act, AutoNation and SunTrust both sought to compel arbitration pursuant to the above provisions.

The Garzas resisted being sent to arbitration, contending that the arbitration provisions were unenforceable due to procedural unconscionability in that they had been actively manipulated into signing the contract without first reading and reviewing it.

In his affidavit attached to the Garzas' response, Mark described the two-hour period that he, Stephanie, and their two children (ages 11 and 13) spent at the dealership on October 17, 2018. Mark stated that they had arrived around 5 p.m. and that as AutoNation's finance and insurance manager prepared the sales documents on his computer, he and his wife could see only the back of the computer and not the display. As the manager completed each page, he directed the Garzas to initial or sign the bottom on a small iPad, and he scrolled down each page to direct and guide them. *See* Tex. Bus. & Com. Code Ann. § 322.007(d) ("If a law requires a signature, an electronic signature satisfies the law."); Tex. Transp. Code Ann. § 501.174(b) (same). Mark averred that this had been the first time he had signed a contract electronically and that "there was a distinct sense that [they] were being rushed through the

5

process" because the manager moved and spoke very quickly, even assuring the Garzas at one point that it would be done soon enough to get their children home for dinner. Mark stated that the manager never offered to let them read the contract documents before they signed them and that the documents were never printed off in advance for the Garzas to review first.

Mark contended that the iPad had not fully revealed each page's contents except for the portion near their initials or signatures and that by the time they saw the full contract, they had already signed everything electronically. He stated that the manager had given them general explanations of the pages' contents but had not called their attention to the arbitration provisions or to the provision acknowledging their receipt and review of the contract before signing it. Mark averred that the portion of page 6 in bold and capital letters and the bolded paragraph in the middle of the stand-alone arbitration agreement had not been visible on the iPad. He stated that in past transactions,[1] he had always been provided a fully prepared contract before signing and that

> [h]ad the contract documents actually been made available to [the Garzas] in advance, [he] probably would have glanced through the contract documents without reading them in detail. However, [he] would have noticed conspicuous statements like the ones at the top of page 6 at the beginning of the arbitration provision and in the middle of the page of the separate arbitration agreement. Those statements [he] would have read.

---

[1]In the Garzas' live pleading at the time of the hearing, the Garzas stated that Mark had "past experience in owning and driving Ford F250 trucks."

The hearing on AutoNation's and SunTrust's motions to compel arbitration consisted solely of the arguments of counsel before a visiting judge. AutoNation's counsel argued that the Garzas neither denied signing the agreements nor denied that their claims fell within the agreements' scope and that in his affidavit, Mark did not say that they had asked for the contracts to be printed out so that they could read them before signing.[2] The Garzas' counsel acknowledged that the Garzas were literate and understood English but asserted that they had been "gently manipulated into signing each page of the contract without ever seeing it." He complained, "This advance in technology now creates an opportunity for merchants -- car dealers in particular -- to have a contract completely done and signed before the consumer, who is generally unsophisticated in these things, is even given an opportunity to look at it." AutoNation's counsel countered that merely using technology, without more, was not proof of fraud or imposition.

The trial court denied arbitration after "considering the Motion, the Response, the evidence presented, and the arguments of counsel," and the written order provides no explanation for the ruling.

## III. Discussion

AutoNation and SunTrust argue that (1) the trial court erred by refusing to compel arbitration when it is undisputed that the Garzas signed the arbitration

---

[2]SunTrust's counsel stated that she had nothing substantive to add to AutoNation's argument.

agreements and that their claims fall within the agreements' broad scope and (2) the Garzas failed to meet their burden of proving procedural unconscionability or unlawful jury waiver. The Garzas respond that the trial court did not abuse its discretion "when it made the factual determination that procedural unconscionability occurred below that prevents enforcement of the arbitration provisions."

## A. Standard of review

Arbitration is strongly favored. *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 499 (Tex. 2015). When reviewing the denial of a motion to compel arbitration, we defer to the trial court's factual findings that are supported by the evidence but review de novo the trial court's legal determinations. *Rachal v. Reitz*, 403 S.W.3d 840, 843 (Tex. 2013); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 n.9 (Tex. 2008); *see also Wagner v. Apache Corp.*, Nos. 19-0243, 19-0244, 2021 WL 1323413, at *3 (Tex. Apr. 9, 2021); *Friedman & Feiger, LLP v. Massey*, Nos. 02-18-00401-CV, 02-18-00402-CV, 2019 WL 3269325, at *3 (Tex. App.—Fort Worth July 18, 2019, pet. denied) (mem. op. on reh'g).

When the trial court does not enter findings of fact or conclusions of law to explain the denial of a motion to compel arbitration, we must uphold its decision on any appropriate legal theory urged below, but we are limited to considering the grounds presented to the trial court by the party opposing arbitration. *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 389 (Tex. App.—El Paso 2019, no pet.). If a valid arbitration agreement is presented, if the claims at issue fall within its scope,

8

and if the opponent to arbitration fails to prove any defense to enforcement, then the trial court has no discretion but to compel arbitration and abuses its discretion by failing to do so. *Massey*, 2019 WL 3269325, at *9.

## B. Procedural Unconscionability

In the trial court, the Garzas raised procedural unconscionability as their defense to the arbitration provisions' validity and complained that AutoNation's active manipulation, fraud, or imposition of undue advantage caused them to sign the contract without reading it first. They also argued that because they had alleged fraud or imposition, AutoNation had the burden to show that they had executed the jury waiver knowingly and voluntarily.

Procedural unconscionability refers to the circumstances surrounding an arbitration provision's adoption. *Royston, Rayzor*, 467 S.W.3d at 499; *BBVA Compass Inv. Sols., Inc. v. Brooks*, 456 S.W.3d 711, 724 (Tex. App.—Fort Worth 2015, no pet.). Situations that are procedurally unconscionable involve those in which one of the parties is incapable of understanding the agreement without assistance and the other party does not provide that assistance, such as when one of the parties is functionally illiterate or does not speak English. *Brooks*, 456 S.W.3d at 724.

Absent fraud, misrepresentation, or deceit, one who signs a contract is deemed to know and understand its contents and is bound by its terms. *Royston, Rayzor*, 467 S.W.3d at 500; *In re Bank of Am., N.A.*, 278 S.W.3d 342, 344–45 (Tex. 2009) (orig. proceeding). Further, absent fraud, unequal bargaining power does not establish

9

grounds for invalidating an arbitration agreement, and the fact that a person does not read what he signs does not—by itself—render the agreement unconscionable. *Martinez*, 600 S.W.3d at 395. The Garzas had the burden to prove their defense. *Royston, Razor*, 467 S.W.3d at 499–500.

AutoNation and SunTrust argue, and the record reflects, that there is no evidence (1) that the Garzas were illiterate or had any difficulty speaking, reading, or understanding English; (2) that the Garzas objected to the use of the iPad to sign the contracts or that the iPad on which they signed the various documents was somehow defective or unreadable; (3) that AutoNation's manager misrepresented any contract terms, refused to allow the Garzas to stop and read the iPad at any point, or refused to allow them to scroll through the documents on the iPad at their leisure; or (4) that there were any elements of fraud, imposition, trick, or artifice in the Garzas' signing the documents.[3] To the contrary, the Garzas agree that they are not functionally illiterate and that they both read and understand English. They nonetheless assert that the arbitration clause "is procedurally unconscionable and unenforceable because

---

[3]AutoNation further contends that to hold in the Garzas' favor as they "attempt to portray the use of electronic documents and tablet devices to sign contracts as procedural[ly] unconscionable . . . would severely undermine numerous electronic consumer contracts that are both commonplace and essential to the modern economy." The Garzas respond that they are not claiming that the use of the electronic method to sign documents was unconscionable but rather that AutoNation "used the electronic method to facilitate its manipulation of [them] into signing the contract without first seeing it and in doing so took undue or unfair advantage of them."

[AutoNation] actively coaxed and manipulated them into signing the contract digitally without first reading and reviewing it." They argue, as they did in the trial court, that the AutoNation manager's approach "of having them sign the contract piecemeal, one page at a time without most of each page being visible" manipulated them into signing the entire contract without reading it first.

The Garzas have presented a modern-day cautionary tale about a consumer's continued need to carefully read a contract before signing it, including asking for a print-out. If they felt rushed or pressured by the dealership manager, they could have walked away from the sale—as car buyers historically have done. The Garzas did not allege in their pleadings, in their response to the motions to compel, or in Mark's affidavit that they were affirmatively misled about the contract's contents or that they were prevented by anything beyond their own impatience from slowing down the sales process so that they could read and review the entire contract.

Because the Garzas failed to prove their procedural-unconscionability defense, the trial court had no discretion but to compel arbitration and thus abused its discretion by failing to do so. *See Massey*, 2019 WL 3269325, at *9. And because the Garzas failed to show fraud or the imposition of undue advantage, AutoNation and SunTrust had no burden to show that the Garzas had executed the jury waiver knowingly and voluntarily. *See Bank of Am., N.A.*, 278 S.W.3d at 345 (holding that when no evidence was produced of fraud or imposition, the conspicuous waiver of

11

trial by jury was presumed to be knowingly and voluntarily executed). Accordingly, we sustain AutoNation and SunTrust's dispositive issue.

## IV. Conclusion

Having sustained AutoNation and SunTrust's dispositive issue, we reverse the trial court's order denying arbitration, release our July 16, 2020 stay of the trial court proceedings,[4] and remand this case for further proceedings not inconsistent with this opinion.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: September 2, 2021

---

[4]The appeal was also stayed during a subsequently resolved bankruptcy proceeding.

12