

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| IN RE: | | No. 08-18-00030-CV |
| | § | |
| WESTERN DAIRY TRANSPORT, | | AN ORIGINAL PROCEEDING |
| L.L.C. AND JORGE HERNANDEZ, | § | |
| | | IN MANDAMUS |
| Relators. | § | |
| | | |
| | § | |

## **O P I N I O N**

Western Dairy Transport, L.L.C., and Jorge Hernandez (Relators) have filed a mandamus petition against the Honorable Francisco X. Dominguez, Judge of the 205th District Court of El Paso County, Texas, seeking mandamus relief from Respondent's order granting motions to compel discovery filed by Evelyn L. Lopez, individually and as next friend of H.B.Q. and X.I.Q., minor children, and on behalf of the Estate of Marcos R. Quinones, Norma Quinones, and Raul Quinones (Plaintiffs). We deny mandamus relief.

### **FACTUAL AND PROCEDURAL SUMMARY**

Western Dairy is an authorized motor carrier located in Cabool, Missouri. On April 24, 2015, Western Dairy signed an Independent Contractor Agreement with Jorge Hernandez, a resident of El Paso, Texas, and owner of a commercial truck. By terms of their agreement, Hernandez leased his truck and provided a commercial driver to Western Dairy pursuant to applicable federal leasing regulations; while Western Dairy in turn arranged for shipments.

Throughout the term of the agreement, Hernandez's truck would be identified as being operated by Western Dairy. On the same day Hernandez signed the agreement, he hired Marcos Quinones, also a resident of El Paso, to work as a driver.

Among other terms, the Independent Contractor Agreement included a forum-selection clause stating as follows:

> GOVERNING LAW AND CHOICE OF FORUM. This Agreement is to be governed by the laws of the United States and of the State of Missouri, without resort to the choice-of-law rules thereof, and CARRIER and CONTRACTOR hereby consent to the jurisdiction of the state and federal courts of Missouri. The parties further agree that any claim or dispute arising from or in connection with this Agreement or otherwise with respect to the overall relationship between the parties, whether under federal, state, local, or foreign law, shall be brought exclusively in state or federal courts located in Missouri.

On January 5, 2016, while Quinones drove the truck owned by Hernandez that was then operated under the authority of Western Dairy, he was injured and ultimately died in a trucking accident that occurred on Interstate 10 in San Antonio, Texas. At the time of his death, Quinones was survived by his wife, two children, and his parents, all of whom were residents of El Paso, Texas. Joined together as Plaintiffs, Quinones' heirs filed a negligence and wrongful death suit against Hernandez and Western Dairy in the 205th District Court of El Paso County, Texas. In their original petition, Plaintiffs alleged that Hernandez was a resident of Texas, and Western Dairy was a Delaware Corporation doing business in Texas.[1]

Soon after filing general denials, Hernandez and Western Dairy jointly filed a motion to dismiss Plaintiffs' suit based on their assertion that the forum-selection clause contained in the independent contractor agreement, entered with each other, was enforceable against Plaintiffs' suit, and thereby, required that it be brought in Missouri. Along with their motion, Western Dairy

---

[1] Plaintiffs later amended their petition to include a claim for failure to provide workers' compensation benefits, breach of contract, insurance code violations, breach of the duty of good faith and fair dealing, economic duress, and fraudulent and negligent misrepresentation.

and Hernandez attached affidavits from Hernandez himself, from an insurance claims representative, and from a Western Dairy representative. Hernandez's affidavit asserted he informed Quinones about his agreement with Western Dairy including discussion of insurance benefits and about government registration and authorizations required to operate the truck. Among other things, the affidavit of Western Dairy's representative asserted, "Western Dairy complied with all required federal and Texas state registration and authorization requirements in order to operate Hernandez's truck interstate and within Texas[.]"

The next week, Plaintiffs filed discovery motions in which they sought to compel depositions of Hernandez and Western Dairy's designated representative asserting they had not yet been able to be scheduled by agreement. The deposition notice served on Western Dairy's representative included a subpoena duces tecum requesting sixty-nine items of information. Plaintiffs also sought to compel responses to interrogatories and requests for production of documents. Days later, Plaintiffs filed a motion for continuance of the motion to dismiss requesting time for completion of "reasonable discovery" to "prepare a response." Hernandez and Western Dairy jointly filed responses to Plaintiffs' motions to compel discovery asserting that discovery was not appropriate or necessary until the court ruled on their pending motion to dismiss. Rather than object on substantive grounds (e.g., requests being irrelevant, overly broad, or vague), Hernandez and Western Dairy "reserved" these objections arguing that Plaintiffs had sought discovery on the merits which was not allowed before disposition of the pending motion to dismiss.

The trial court issued an order setting separate hearings for the pending discovery motions followed by a second hearing for the motion to dismiss based on the forum-selection clause. Within its order setting hearings, the trial court also stated that "without reaching the merits of [Relators'] Motion to Dismiss or Plaintiffs' motions to compel discovery and depositions, it

3

appears to the Court that, at a minimum, Plaintiffs are immediately entitled to discovery related to the limited issue of the enforceability or validity of the forum-selection clause and [Relators'] Motion to Dismiss."

After Plaintiffs issued a second round of deposition notices, Western Dairy and Hernandez filed motions to quash claiming the discovery sought exceeded the court's prior ruling. Although the parties later conferred, they were unable to reach an agreement on their dispute over discovery. On July 27, 2017, the trial court held a hearing on these discovery motions. At the hearing, the court stated, "we're limiting the number of people that are going to be deposed and we're limiting the number of documents that are going to be gathered." The court then indicated it would order the deposition of Hernandez and a representative of Western Dairy, and additionally, it would require production of the driver qualification file required by the applicable Federal Motor Carrier Act and other related items. Following the hearing, the parties submitted proposed orders, but none was signed as they continued to disagree about the order's language.

At a second hearing held on January 17, 2018, the trial court first heard argument then gave guidance to resolving the parties' ongoing dispute. The trial court indicated it would allow discovery at a minimum to include the driver qualification file of Quinones stating it was statutorily required to be maintained. The trial court instructed Plaintiffs to circulate a proposed order for Western Dairy and Hernandez to review and provide "some kind of response." The court indicated it would then issue its discovery ruling and set a hearing on the motion to dismiss, at least forty-five days later, to allow the parties to incorporate discovery responses in their arguments. The court also stated, "if there are complications or delays, we'll – I'll take that into account."

Eventually, on February 15, 2018, the court signed an order compelling discovery from Hernandez and Western Dairy. On this order, the signature line of the attorney representing both

Hernandez and Western Dairy indicated he had approved as to form only with an explanation provided in an end note.[2]

Hernandez and Western Dairy then filed their petition for mandamus relief and this proceeding followed.

## DISCUSSION

In their first issue, Relators contend the trial court abused its discretion in ordering them to respond to certain discovery before the court ruled on their motion to dismiss based on a forum-selection clause. Characterizing the discovery as "merits-based," Relators assert the trial court's order requires them to answer discovery that is "simply not allowed at this juncture." In their second issue, Relators contend the burden fell on Plaintiffs to make a showing of necessity for limited discovery before the discovery sought could be compelled by the court. Viewing these issues as interrelated, we consider them together.

### *Mandamus Standard of Review*

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding).

### *Forum-Selection Clauses*

---

[2] The explanation stated that "Defendants disagree with ordering any merits-based discovery in this case before disposition of their pending motion to dismiss, this proposed order in Defendants' estimation reflects the Court's order or apparent intention as expressed at the January 17, 2018 and the July 27, 2017 hearings. Therefore, these files are ordered produced in this proposed order. Defendants agree only as to the form of the order but disagree and should not be construed as concurring with the content and result."

Forum-selection clauses are contractual provisions whereby parties agree in advance to submit their disputes for resolution within a particular jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex. 2017). As a general proposition, a forum-selection clause may be enforced only by and against a party to the agreement containing the clause. *Pinto Tech.,* 526 S.W.3d at 443 (citing *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding) (addressing whether a nonsignatory of an arbitration clause can compel arbitration against a party to the clause)). Enforcement of these clauses depends on the contract's language, as courts are required to "give effect to the parties' intent as expressed in the four corners of the [agreement]." *Pinto Tech.*, 526 S.W.3d at 432. Forum-selection clauses are generally enforceable in Texas subject to public-policy constraints. *Id*.

Regardless of general enforceability, disagreements sometimes arise over who may be bound to a forum-selection clause or whether claims alleged in a lawsuit fall under the scope of such a clause. *Id.* at 437. In resolving disputes, courts are not only guided by federal law, but also by drawing analogies to arbitration cases based on the recognition that clauses requiring arbitration are "a specialized kind of forum-selection clause." *Id*. (quoting *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 519 (1974)); *In re AIU Ins. Co*., 148 S.W.3d 109, 115 (Tex. 2004) (orig. proceeding). As to both arbitration and forum clauses, nonsignatories may be bound only under recognized contract or agency principles. *Carlile Bancshares, Inc. v. Armstrong*, No. 02-14-00014-CV, 2014 WL 3891658, at *7 (Tex.App.—Fort Worth Aug. 7, 2014, no pet.) (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas,* 464 F.3d 514, 517 (5th Cir. 2006); *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding) (recognizing contract and agency theories that may bind non-signatories to arbitration agreements)). Because forum-selection clauses are

creatures of contract, the Texas Supreme Court noted that "the circumstances in which nonsignatories can be bound to a forum-selection clause are rare." *Pinto Tech.*, 526 S.W.3d at 443. As a case of first impression, the parties in this mandamus proceeding rely heavily on guidance from cases involving motions to compel arbitration. We follow suit.

*Burden-Shifting Framework*

Texas courts use a burden-shifting framework in deciding whether a trial court is required to compel a party to arbitration. To compel arbitration, a party must: (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (orig. proceeding); *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex.App.—El Paso 2013, no pet.).

Determining whether there is a valid agreement is a question of state contract law and is a gateway matter for the court. *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 631 (Tex. 2018); *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 187 (Tex. 2009) (orig. proceeding); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (holding that, when deciding whether the parties agreed to arbitrate, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts"). When parties have not agreed to submit the arbitrability question itself to arbitration, "then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." *First Options of Chicago, Inc.*, 514 U.S. at 943. "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration." *Id*.

Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable evidence" of an agreement to do so. *Id*. at 944. Neither federal law nor

Texas jurisprudence recognize a presumption in favor of arbitration when determining initially whether a valid arbitration agreement in fact exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *see also Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir. 2002) (federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate; instead, ordinary contract principles are applied). The initial burden of establishing an agreement's existence is evidentiary and runs with the party seeking to compel its enforcement. *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812 (Tex.App.—El Paso 2014, no pet.) ("An employer attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements.").

Although courts may express a strong presumption favoring arbitration, "the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *J.M. Davidson*, 128 S.W.3d at 227 (citing *Prudential Secs., Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex. 1995)); *Wright v. Hernandez,* 469 S.W.3d 744, 751 (Tex.App.—El Paso 2015, no pet.) ("[W]hen we are called upon to decide whether the parties have agreed to arbitrate, we do not resolve doubts or indulge a presumption in favor of arbitration, because no party may be forced to submit to arbitration in the absence of sufficient showing that the parties entered into a valid and binding arbitration agreement."). Arbitration cannot be ordered in the absence of a binding agreement. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) (per curiam) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960)); *see* 9 U.S.C. § 2; TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001, 171.021. Accordingly, the first analytical step requires the party moving to compel arbitration to adequately "show the agreement meets all requisite contract elements." *J.M. Davidson*, 128 S.W.3d at 228.

When a party does not contest the existence of an arbitration agreement, or its existence has been otherwise established, the second step of the analysis requires a determination of whether the parties' dispute falls within the agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737. When courts are called on to decide if disputed claims fall within the scope of an arbitration clause under either the Federal Arbitration Act or the Texas Arbitration Act, the Texas Arbitration Act controls that determination. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268–69 (Tex. 1992) (citing TEX. REV. CIV. STAT. ANN. art 225, redesignated as TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.002–171.020 by Acts 1995, 74th Leg., ch. 588, § 1, eff. Sept. 1, 1995).

For a determination of scope, the jurisdiction of the trial court is invoked in support of the arbitration proceeding itself. TEX. CIV. PRAC. & REM. CODE ANN. § 171.086 (a–c). For example, a party may file an application for a court order to effect service of process, *id.*, § 171.086(a)(1), to invoke in rem jurisdiction over an ancillary proceeding, *id.*, § 171.086(a)(2), to restrain or enjoin the destruction of the subject matter of the controversy, or evidence needed for the arbitration, *id.*, § 171.086(a)(3), or to obtain an order for a deposition for discovery, for perpetuation of testimony, or for evidence needed before the arbitration proceedings begin. *Id.*, § 171.086(a)(4). Under these circumstances, pre-arbitration discovery of the merits of the case is not permitted by the Texas Arbitration Act because liability ultimately must be decided during the arbitration itself. *In re Houston Pipe Line Co.*, 311 S.W.3d 449, 450 (Tex. 2009) (orig. proceeding) (citing *Tipps*, 842 S.W.2d at 268). Instead, discovery is limited to information regarding the scope of an arbitration provision or other issues of arbitrability. *Id.* at 451 (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.023(b), 171.086(a)(4), (6)). A party opposing arbitration is entitled to pre-arbitration discovery on a defense, if and only if, he or she shows, or provides a colorable basis or reason to believe, that

the discovery requested is material in establishing the defense. *In re VNA, Inc.*, 403 S.W.3d 483, 487 (Tex.App.—El Paso 2013, no pet.) (orig. proceeding).

With a determination of scope, there is a reversal of the presumption not favoring arbitration given that the arbitration agreement itself has already been established. When courts are determining whether a claim falls within the scope of an arbitration agreement, doubts are resolved in favor of arbitration. *First Options of Chicago, Inc.*, 514 U.S. at 944–45 (with respect to the question of scope, the law reverses the presumption); *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985) ("'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'") (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983)).

*Nonsignatory Involvement*

The Texas Supreme Court cautioned that the involvement of a nonsignatory is an important distinction when deciding whether parties agreed to arbitrate because a party cannot be forced to arbitration absent a binding agreement to do so. *Jody James Farms*, 547 S.W.3d at 632 (citing *United Steelworkers of America*, 363 U.S. at 582) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). The critical question the court must focus on is whether a binding arbitration agreement exists between the party compelling arbitration and the party who is a nonsignatory. *Jody James Farms,* 547 S.W.3d at 632. A contract that is silent on a matter cannot speak to that matter with unmistakable clarity, so an agreement silent about arbitrating claims against nonsignatories does not unmistakably mandate arbitration of arbitrability in such cases. *Id.* (citing *First Options of Chicago, Inc.*, 514 U.S. at 944). In disputes with nonsignatories, compelled arbitration cannot precede a judicial determination that an agreement to arbitration exists. *Id.,* at 633.

*Analysis*

Although this mandamus proceeding concerns a discovery dispute, the context of the case at large necessarily impacts our analytical process. Relators contend the trial court abused its discretion in determining whether the discovery sought was permitted before it ruled on the merits of the motion to dismiss based on the forum agreement they had entered with each other. Relators also contend the trial court abused its discretion in failing to shift the burden onto Plaintiffs to show "a colorable basis or reason to believe that the discovery requested [was] material in establishing the enforceability of the forum-selection clause." As to both of Relators' issues, we disagree.

Because the presence of nonsignatories fully calls into question whether the forum-selection clause is binding on Plaintiffs, we frame the threshold issue firmly on the first step of the analysis. As a gateway matter, the trial court must decide whether a binding agreement exists between Plaintiffs, as nonsignatories, and Relators, as parties, pursuant to contract and agency principles. *See Hellenic Investment Fund, Inc.*, 464 F.3d at 517–18 ("Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so."). Because the existence of a binding agreement with nonsignatories remains in dispute, the jurisdiction of the trial court in this instance was not invoked in support of an existing agreement to determine scope or matters of arbitrability, but rather, independently to resolve a gateway matter committed to the court. *See Jody James Farms*, 547 S.W.3d at 631; *J.M. Davidson*, 128 S.W.3d at 228. State law governing the validity, revocability, and enforceability of contracts generally controls this determination. *Jody James Farms,* 547 S.W.3d at 631. Accordingly, we conclude that the initial burden remains on Relators to establish the forum

agreement is binding on Plaintiffs before any presumption in favor of the agreement would thereafter apply. *See J.M. Davidson,* 128 S.W.3d at 227.

Relators rely on a line of arbitration cases including *In re Houston Pipe Line*, 311 S.W.3d 449, 451 (Tex. 2009) (orig. proceeding) and *In re ReadyOne Indus., Inc.*, 400 S.W.3d 164, 168 (Tex.App.—El Paso 2013, orig. proceeding), to support their contention that discovery on the merits of the case is not allowed before disposition of their motion. Relators contend the only discovery allowed prior to the court's ruling on the pending motion is discovery limited to circumstances where the court lacks sufficient information regarding the scope of the forum-selection clause or other issues of enforceability. Relators claim that the burden falls on the party opposing the forum-selection clause to show a colorable basis or reason to believe that the discovery requested is material in establishing the enforceability of the forum-selection clause. For this second proposition, Relators rely on *In re VNA, Inc.*, 403 S.W.3d at 486-88; *In re ReadyOne Indus., Inc.*, 400 S.W.3d at 169, 172-73; and *In re ReadyOne Industries, Inc.*, 394 S.W.3d 680, 684, 686-88 (Tex.App.—El Paso 2012, orig. proceeding). Because these cases all pertain to a scope determination or other affirmative defense, they involve the second step of the analysis, not the first. Thus, we disagree with Relators' assertion that they are controlling or persuasive in this instance.

First, in *In re Houston Pipe Line*, the existence of an arbitration agreement between two principal parties to a gas purchase agreement, Houston Pipe Line and O'Connor, was not an issue disputed by the parties. *In re Houston Pipe Line*, 311 S.W.3d at 450. Alleging price manipulation, O'Connor filed suit in that case against Houston Pipe Line and three others who were themselves not signatories to the purchase agreement. *Id*. The interests of the nonsignatories aligned with Houston Pipe Line and together they sought to compel arbitration against O'Connor. *Id*. As

described by the intermediate appellate court, O'Connor invoked the jurisdiction of the trial court to request injunctive relief and pre-arbitration discovery. *Houston Pipe Line Co., L.P. v. O'Connor & Hewitt, Ltd.*, 269 S.W.3d 90, 94 (Tex.App.—Corpus Christi 2008), *subsequent mandamus proceeding sub nom. In re Houston Pipe Line Co.*, 311 S.W.3d 449 (Tex. 2009) (orig. proceeding). The Texas Supreme Court characterized O'Connor's resistance to arbitration as "attacking the scope of the arbitration provision," not questioning whether it was binding or properly formed. *In re Houston Pipe Line Co.*, 311 S.W.3d at 450.

Given an absence of a dispute on the formation of the arbitration agreement, the Supreme Court noted the trial court's role explaining, "[w]hen a party disputes the scope of an arbitration provision or raises a defense to the provision, the trial court, not the arbitrator, must decide the issues." *Id.* at 451. Under such circumstances, "[p]re-arbitration discovery is expressly authorized under the Texas Arbitration Act when a trial court cannot fairly and properly make its decision on the motion to compel because it lacks sufficient information regarding the scope of an arbitration provision or other issues of arbitrability." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.023(b), 171.086(a)(4), (6)). Finding that the Texas Arbitration Act governed the proceeding, the Supreme Court concluded that O'Connor's requested discovery was overbroad and beyond the issues raised in the motion to compel. *Id.* at 452.

Similarly, in *In re ReadyOne Indus., Inc.*, 400 S.W.3d at 167, the case also did not involve a nonsignatory being compelled to arbitration as the employer seeking arbitration provided a document titled "Receipt and Arbitration Acknowledgment," written in Spanish, which was purportedly signed by the employee. *Id.* With the existence of an arbitration agreement established by prima facie proof, the burden shifted to the employee resisting arbitration to establish a "colorable basis or reason to believe that discovery would be material in establishing

that the arbitration agreement was invalid and unenforceable because [of being] fraudulently induced to sign the arbitration agreement." *Id.* at 169.

Finally, in *In re VNA, Inc.*, 403 S.W.3d at 485, the employee resisting arbitration who admittedly signed an agreement containing an arbitration clause, argued not that the agreement did not exist, but that it was substantively unconscionable. Adhering to the presumption of favoring arbitration, we granted mandamus relief after concluding that the employee who was resisting arbitration had failed to provide a colorable or reasonable basis for believing discovery would materially aid her in establishing her defense to the validity of the agreement. *Id.* at 485-86.

Unlike the line of cases cited by Relators, the forum-selection agreement here has not yet been established as binding on Plaintiffs. Thus, we hold that state law governing the validity, revocability, and enforceability of contracts generally controls this gateway determination of whether nonsignatory plaintiffs are bound by the terms of the forum-selection clause. *See Jody James Farms,* 547 S.W.3d at 631; *J.M. Davidson*, 128 S.W.3d at 228. In its current posture, the burden remains on Relators to establish the existence of a binding forum agreement with Plaintiffs. *See United Rentals*, 445 S.W.3d at 812. Accordingly, the trial court decides this question independently, without a presumption, just as it would decide any other question where parties have not yet agreed. *See First Options of Chicago, Inc.*, 514 U.S. at 943; *see also J.M. Davidson, Inc.*, 128 S.W.3d at 227; *Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir. 2002) (federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate; instead, ordinary contract principles are applied). As confirmed by the Texas Supreme Court, the Texas Arbitration Act is not jurisdictional and operates simply to facilitate arbitration agreements. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 96–97 (Tex. 2011).

Without a binding agreement, we hold that the pre-arbitration discovery limits imposed by the Texas Arbitration Act are not yet applicable.

For these reasons, we disagree with Relators' assertion that the statutory provision of the Texas Arbitration Act requires a limitation on pre-arbitration discovery at this juncture of the proceedings below. Neither *Houston Pipe Line* nor the other line of cases relied on by Relators stand for the proposition that parties who have not yet been shown to have entered into a binding contract are obligated nonetheless. *See In re Houston Pipe Line*, 311 S.W.3d at 451; TEX. CIV. PRAC. & REM. CODE ANN. § 171.086(a)(4). Passing over the question of whether there is a valid and binding agreement with nonsignatory Plaintiffs, Relators shift the initial burden required to establish the existence of a binding agreement to the nonsignatory parties as if those parties carry the initial burden. Neither the plain text of the Texas Arbitration Act, nor the line of cases cited by Relators, support this extension of the pre-arbitration discovery limitation to a case involving a disputed forum-selection clause being asserted against nonsignatories.

*Discovery Order at Issue*

Relators also contend the trial court clearly abused its discretion by ordering discovery that it characterized as "merits-based discovery" before the court ruled on their motion to dismiss. Plaintiffs counter that the trial court's discovery order shows that the orders compelling production of documents and two depositions "are linked to issues related to [Relators'] Motion to Dismiss." We agree with Plaintiffs.

The Texas Rules of Civil Procedure, and the federal rules upon which they are based, mandate a flexible approach to discovery. *Walker v. Packer*, 827 S.W.2d 833, 838 (Tex. 1992). "[T]he ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex.

1984), *disapproved of by Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992); *see also Tom L. Scott, Inc. v. McIlhany,* 798 S.W.2d 556, 559 (Tex. 1990); *Garcia v. Peeples,* 734 S.W.2d 343, 347 (Tex. 1987). Ordinarily, the scope of discovery is largely within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d at 941; *Dillard Dept. Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without reference to guiding rules and principles. *In re Colonial Pipeline Co*., 968 S.W.2d at 941.

Texas's procedural rules define the general scope of discovery as permitting any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is "reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a). The scope of discovery may be limited, however, if the trial court determines that (a) the discovery sought is unreasonably cumulative or duplicative, or (b) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. TEX. R. CIV. P. 192.4. Here, the parties' disagreement includes two principal issues: (1) whether the forum-selection clause is binding on Plaintiffs as nonsignatories; and if so, (2) whether Plaintiffs' claims fall within the scope of the provision.

Relators contend that Plaintiffs are bound by the forum-selection clause under principles of direct benefits estoppel or third-party beneficiary status.[3] Direct-benefits estoppel applies when a nonsignatory "knowingly exploits the agreement containing the arbitration clause." *Bridas*

---

[3] Here and below, Relators rely on three cases: *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739; *Loya v. Loya*, 507 S.W.3d 871, 877 (Tex.App.—Houston [1st Dist.] 2016, no pet.); *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 775–77 (Tex.App.—Beaumont 2008, orig. proceeding).

*S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361–62 (5th Cir. 2003) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001)). The doctrine is invoked if "non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic*, 464 F.3d 517–18; *see also Carr v. Main Carr Dev., LLC,* 337 S.W.3d 489, 497 (Tex.App.—Dallas 2011, pet. denied). Direct-benefits estoppel has been applied to enforce forum-selection clauses against nonsignatories seeking to sue on the contract containing the forum-selection clause. *See, e.g., Hellenic,* 464 F.3d at 520. Additionally, it has also been recognized that a nonparty may seek or obtain direct benefits from a contract by means other than a lawsuit. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding) (nonsignatory compelled to arbitration). A contract may be exploited by a nonsignatory knowingly seeking and obtaining direct and substantial benefits from the performance of the contract. *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010); *Fleetwood Enterprises, Inc.*, 280 F.3d at 1074; *In re Weekley Homes, L.P.*, 180 S.W.3d at 131–33.

Pursuant to a third-party beneficiary theory, a nonsignatory to a contract containing a forum-selection clause may be bound by the clause if he or she is deemed a third -party beneficiary of the contract. *In re Citgo Petroleum Corp.*, 248 S.W.3d at 775–77. Contracts may be enforced by third-party beneficiaries so long as "the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit." *Jody James Farms*, 547 S.W.3d at 635. Neither general beneficence, nor indirect or incidental benefits, establish the necessary level of intent. *Id*.

After reviewing our record, we hold that the discovery ordered by the court related to establishing or defending against theories asserted by Relators and fell squarely within the trial court's discretion. TEX. R. CIV. P. 192.3(a). The direct benefits estoppel theory alone puts the performance of the Independent Contractor Agreement at issue along with benefits provided to Plaintiffs pursuant to that agreement. *See Hellenic*, 464 F.3d 517–18; *In re Weekley Homes, L.P.*, 180 S.W.3d at 132. Beyond these matters, additional information is relevant to the enforcement of an agreed-forum of Missouri given that courts may refuse to enforce forum-selection clauses for public-policy constraints including fraud or overreaching, contravention of public policy of the forum where the suit was brought, considerations of whether the clause is unreasonable or unjust, or recognition that enforcement would result in serious inconvenience. *See Pinto Tech.*, 526 S.W.3d at 432 n.1 (citing *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 231–32 (Tex. 2008) (orig. proceeding); *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding) (internal citation omitted)).

Contrary to Relators' assertion of "merits-based" requests, the discovery order at issue here recites that it is ordering discovery based on a finding that the discovery requested by Plaintiffs is reasonably calculated to lead to the discovery of admissible evidence for the claims made the basis of "[Relators] matter pending before this Court." This reference clearly limits discovery to the pending motion to dismiss, not to the underlying case itself. *See* TEX. R. CIV. P. 192.4. The trial court exercised its discretion by limiting discovery to "[Relators'] basis to require Plaintiffs and the claim to be brought in Missouri instead of Texas[.]"

> Specifically, the discovery order included the following finding:
>
> The Court finds the requests for production are reasonably calculated to lead to the discovery of admissible evidence on the agreement, that the Driver Qualification files of Marcos Quinones and Jorge Hernandez need to be produced, and discovery is appropriate on [Relators'] basis to require Plaintiffs and the claim to be brought

in Missouri instead of Texas, the employment of Marcos Quinones, the hiring of Marcos Quinones with Defendants, the agreements with Marcos Quinones and Plaintiffs with Defendants, the representations made to Marcos Quinones and Plaintiffs, the information provided or made available to Marcos Quinones and Plaintiffs, the records and documents required to be kept pursuant to the Federal Motor Carrier Safety Regulations that relate to Marcos Quinones and the vehicle and mission he was involved with at the time of this incident, how [Relators] have addressed other similar incidents of drivers who were injured or killed and the insurance claim involving Great American Insurance Company.

The following thirty-one requests for production of documents were thereafter ordered by the court

"to the extent they were not already provided by [Relators]:"

l. The Driver Qualification file for Plaintiff Marcos R. Quinones as required by Federal Motor Carrier Regulations Part 391.51.

2. The Driver Qualification file for Defendant Jorge Hernandez as required by Federal Motor Carrier Regulations Part 391.51.

3. All contracts, agreements, correspondence, and emails with MARCOS R. QUINONES involving choice of venue in Missouri.

4. All contracts, agreements, correspondence, and emails with JORGE HERNANDEZ involving choice of venue in Missouri.

5. All driving logs and records of MARCOS R. QUINONES showing he was driving in the State of Missouri at any time.

6. Bills of lading, trip records, invoices and load documents and description and any contracts therein for the trip MARCOS R. QUINONES was making at the time of this incident whether any portion was in Missouri.

7. Dispatcher's records, time records and driving logs concerning the trip MARCOS R. QUINONES was making at the time of this incident whether any portion was in Missouri.

8. All ownership documents on the tractor and trailer in question including the title to the tractor and trailer.

9. Any computer records on the truck, including Qualcomm, Peoplenet, GPS records, emails, black box/speed records and other electronic recorded information for the trip in question.

10. Western Dairy Transport, LLC's DOT permit.

11. Jorge Hernandez's DOT permit and CDL license.

12. Western Dairy Transport, LLC's Transportation license issued by Texas and Missouri.

13. Jorge Hernandez's Transportation license issued by Texas and Missouri.

14. All purchase, inspection, maintenance and repair records for the tractor and trailer, its wheels and tires, particularly any records in Missouri.

15. Any physical examinations and medical examination performed of Plaintiff Marcos R. Quinones, particularly in Missouri.

16. Any agreement, contract or employment agreement regarding your relationship with Jorge Hernandez, particularly in Missouri.

l7. All contracts, agreements, emails, correspondence with Great American Insurance Company on the Insurance involving Marcos R. Quinones particularly showing Marcos R. Quinones was at any time in Missouri, including payment, receipts, rebates and any other consideration exchanged by you.

18. Plaintiff's complete claim file (including electronic file) on the policy of insurance with Great American lnsurance Company (GAIC) from the date of first application to present particularly showing Marcos R. Quinones was in Missouri at any time.

19. Plaintiff's complete underwriting file on the policy of insurance with Great American Insurance Company (GAIC) from the date of first application to present particularly showing Marcos R. Quinones was in Missouri at any time.

20. All payments, rebates, commissions and other consideration between GAIC and Western Dairy on the insurance policy involving Marcos R. Quinones particularly showing Marcos R. Quinones was in Missouri at any time.

21. All licenses and authorizations of this Defendant to do insurance business in Texas.

22. Plaintiff's complete insurance file on Marcos R. Quinones and Quinones Family, including but not limited to any and all documents, correspondence (including those with GAIC and its attorneys), notes, memoranda, or other materials and computer records relating to Quinones Family particularly showing Marcos R. Quinones was in Missouri at any time.

23. All documents justifying non-payment of the insurance claim for the death of Marcos Quinones.

24. A Certified copy of the complete insurance policy with GAIC, including declaration sheet, binder and application on the insurance policy made the basis of this claim particularly showing Marcos R. Quinones was in Missouri at any time.

25. Your entire claim file, including correspondence and electronic documents, pertaining to the insurance benefit dispute of Quinones Family claim.

26. All statements made by any witness, party and Quinones Family particularly showing Marcos R. Quinones was in Missouri at any time.

27. Any and all documents with information on the amount of premiums paid by Decedent on the GAIC policy of insurance particularly showing Marcos R. Quinones was in Missouri at any time.

28. Any and all documents on the premiums paid on the insurance policy involving Marcos R. Quinones, showing the person or entity that paid this policy particularly showing Marcos R. Quinones was in Missouri at any time.

29. Any and all documents including applications, and insurance applications and all documents signed by Marcos Quinones particularly showing Marcos R. Quinones was in Missouri at any time.

30. Any and all documents and communications with anyone concerning the GAIC policy as it relates to Marcos Quinones, including electronic communications, including all communications with GAIC and any attorneys representing GAIC or Jorge Hernandez, its agents, representatives and insurers, particularly showing Marcos R. Quinones was in Missouri at any time.

31. Any and all documents the entire file on the GAIC policy as it relates to Marcos Quinones and Jorge Hernandez, including Western Dairy's information relating to them, particularly showing Marcos R. Quinones was in Missouri at any time.

Additionally, the trial court ordered Relators to produce two witnesses for deposition, Jorge Hernandez and Western Dairy's company representative. The order also confirmed that compliance with the order would not operate as a waiver of Relators' claim that the case should be heard in Missouri.

As the party objecting to discovery, we hold that the burden fell on Relators to show that the discovery ordered was patently irrelevant or duplicative. *See Walker*, 827 S.W.2d at 843. Rather than make those objections, Relators chose to argue that no discovery at all was permitted,

or if permitted, that the burden fell on Plaintiffs to establish that the discovery was necessary. As stated above, given that it has not yet been established whether the forum-selection clause is binding on Plaintiffs, we conclude that Relators' argument wrongly reverses the burden applicable to this gateway matter committed to the court. *See Jody James Farms*, 547 S.W.3d at 631.

Contrary to Relators' assertions, we also conclude that reasonable limitations were imposed by the trial court within its discretion taking into account the needs of the case. *See* TEX. R. CIV. P. 192.4(b). Document production was restricted to matters about contacts with Missouri and other issues having to do with the performance of the contract generally and the benefits received by Plaintiffs. The production of documents ordered was significantly narrowed from the original requests. Only two depositions were permitted in total for the witnesses who submitted affidavits attached to the motion to dismiss and no subpoena duces tecum was included for either witness.

The dissent cites to *In re DISH Network*, *In re Copart*, *In re VNA*, and the *In re ReadyOne* line of cases, as establishing that the party seeking pre-arbitration discovery has the burden to show that the discovery is necessary to the scope of a motion to compel arbitration, and that the party moving to compel arbitration does not have the burden to make a colorable showing that the arbitration agreement is enforceable before it can insist that discovery be limited. We conclude that these cases are distinguishable from the scenario presented by this mandamus proceeding.

In *In re DISH Network*, 563 S.W.3d 433, 436 (Tex.App.—El Paso 2018, orig. proceeding), the case dealt with the enforceability of an arbitration agreement signed by an employer and employee. Likewise, in *In re Copart*, 563 S.W.3d 427, 432 (Tex.App.—El Paso 2018, orig. proceeding), the plaintiff in an employment discrimination case sought to take a deposition as part of pre-arbitration discovery under TEX. CIV. PRAC. & REM. CODE ANN. § 171.086(a)(4) and (6),

which deposition the defendant later challenged in a mandamus proceeding. As discussed earlier, the case of *In re VNA*, 403 S.W.3d at 485–86, concerned the assertion of an affirmative defense by a party to an arbitration agreement. Finally, in the *In re ReadyOne* line of cases, the plaintiffs who sued for negligence sought discovery to support a variety of defenses to arbitration agreements that had been signed. *See In re ReadyOne Industries, Inc.*, 400 S.W.3d at 168–73; *In re ReadyOne Industries, Inc.*, 394 S.W.3d at 686-88; *In re ReadyOne Industries*, 420 S.W.3d 179, 186-87 (Tex.App.—El Paso 2012, orig. proceeding). In sum, none of these cases involve an initial question of whether an agreement is binding on nonsignatories.

Finally, the record indicates the trial court's orders on discovery were motivated by a desire to resolve the merits of whether Relators' forum-selection clause was binding on Plaintiffs based on contract and agency principles as well as constraints of public policy. Guided heavily by existing case law stating that arbitration and forum-selection clauses are to be treated analogously, we hold that the trial court did not order merits-based discovery that was not reasonably related to the pending motion to dismiss, but rather, the court ordered discovery that was tailored to aid in its decision regarding issues raised within Relators' motion to dismiss. *See Pinto Tech.*, 526 S.W.3d at 436–37; *see also In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding); *In re AIU Ins. Co.*, 148 S.W.3d at 116.

Because Relators failed to meet their burden to establish that the trial court clearly abused its discretion, we conclude that Relators failed to show in this instance that they are entitled to mandamus relief. *See In re Colonial Pipeline Co.*, 968 S.W.2d at 941. Accordingly, we deny Relators' petition for writ of mandamus.

GINA M. PALAFOX, Justice

March 22, 2019

Before Rodriguez, J., Palafox, J., and Larsen, J. (Senior Judge)
Rodriguez, J., dissenting
Larsen, J. (Senior Judge), sitting by assignment