

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00171-CV

———————————————

CHRISTOPHER GAINEY A/K/A CHRIS GAINEY, PHILIP LEVY, AND
MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES OF
NEVADA, INC., Appellants

V.

MINOO, LLC, Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 18-2578-431

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

This appeal involves the denial of a motion to compel arbitration. Marcus & Millichap Real Estate Investment Services of Nevada, Inc.; Christopher Gainey; and Philip Levy are the Appellants, and we will refer to them as the Real Estate Agents or the Agents. The party opposing the arbitration, Minoo, LLC, sued the Agents claiming that they had represented a seller in a real estate transaction. In that transaction, Minoo was the buyer of a shopping center and claimed that the Real Estate Agents had failed to disclose information that a major tenant of the shopping center was planning to move. We refer to Minoo as the Buyer.

The Real Estate Agents raise four issues arguing that the trial court should have ordered the claims against them to arbitration even though neither they nor the Buyer had signed the agreement containing the arbitration clause. The issues involve (1) a general challenge to the denial of the Agents' motion to compel arbitration, (2) various theories that bind the Buyer to arbitrate its claims against them, (3) various theories that make the Real Estate Agents able to compel arbitration, and (4) a theory regarding why—if the arbitration agreement may be invoked by the Agents against the Buyer—the arbitration clause covered the claims made by the Buyer. The Buyer counters these arguments and also contends that the Agents failed to present evidence to support their motion to compel arbitration and that this failing alone is enough to sustain the trial court's denial of the motion to compel.

We sustain the Agents' issues for the following reasons:

- We have a record that is sufficient for us to reach the merits of this appeal and to determine whether the trial court abused its discretion by denying the motion to compel arbitration.

- The Buyer acknowledged that the party that had signed the agreement containing the arbitration clause was its agent. The Buyer, as principal, was bound to the agreement by the acts of its agent.

- The Real Estate Agents were third-party beneficiaries of the agreement containing the arbitration clause and thus were able to compel arbitration of the Buyer's claims against them.

- The arbitration clause covered the Buyer's claims because its artful pleading of fraudulent-inducement claims cannot avoid the arbitration clause's broad scope that encompasses claims "relating to" the agreement.

Therefore, we reverse the trial court's order denying the Agents' motion to compel arbitration and render an order granting this motion. We also remand this case to the trial court and order the case stayed pending completion of arbitration.

## II. Factual Background

The Buyer pleaded in its live pleading, its first amended petition, that its agent had negotiated the purchase of the shopping center that forms the basis of the controversy and that its agent had "entered into the Commercial Earnest Money Contract for the purchase of the Property . . . on behalf of [the Buyer]." We will refer to this agreement as the Purchase Agreement.

3

The Buyer pleaded that the Real Estate Agents acted as the seller's real estate agents in the sale of the shopping center and that the relationship between the three Agents was that

> Defendants Levy and Gainey were and are real estate agents for Defendants Marcus & Millichap Capital Corporation ("Millichap") and/or Marcus & Millichap Real Estate Investment Services of Nevada, Inc. ("Millichap Nevada"), and acted as the real estate agents and broker for Hebron Plaza, LLC [the seller] in the sale of the shopping center that is the subject of this suit.

The petition emphasizes that the individual Real Estate Agents were acting in the scope of an agency relationship that they had with the corporate agent: "At all times herein, Defendants Levy and Gainey acted within the scope of duties and agency on behalf of Defendants Millichap and Millichap Nevada, real estate brokers doing business in the State of Texas." The remaining defendant is David R. Harrison, who is not a party to this appeal.[1]

Harrison is described at one point in the Buyer's petition as the manager of the seller of the shopping center, but most of the petition's allegations focus on his

---

[1]Marcus & Millichap Capital Corporation, a defendant below, was included tangentially in the motion to compel and is not a party to this appeal. The motion to compel explains the status of Marcus & Millichap Capital Corporation as follows:

> In this Motion, the "Marcus & Millichap Defendants" group excludes MMCC [Marcus & Millichap Capital Corporation]. Plaintiff incorrectly included MMCC in this lawsuit. MMCC was not a party or an agent to the disputed real estate purchase at issue in the Petition. To the extent that Plaintiff erroneously insists on alleging that MMCC was involved with the underlying negotiation and sale of the subject property, MMCC joins the other Marcus & Millichap Defendants in this Motion.

ownership stake in the liquor store that was the largest tenant in the shopping center. The crux of the suit is that the liquor store tenant had plans to move from the shopping center but that this fact was not disclosed to the Buyer.

The prospect of the largest tenant's move allegedly came to light when one of its employees "intimated" to the Buyer's real estate broker that the liquor store might be moving its location. This revelation prompted an inquiry by the Buyer's broker to the Real Estate Agents. The petition described the inquiry and the Agents' response as follows:

> On or about April 2, 2014, Levy contacted [the Buyer's] broker regarding the status of the underwriting for the purchase of the property. [The Buyer's] broker responded to Levy (and Defendants Millichap and/or Millichap Nevada, Gainey[,] and Harrison were copied on such email) and advised that [the liquor store] employees stated the store was closing but that Harrison has assured [the Buyer] that [the liquor store] is staying at the Property. [The Buyer's] broker stated in such email[,] "Dave has assured me [the liquor store] is staying. If not, we need full disclosure." No response was made by any Defendant copied on the email until April 9, 2014, when Levy requested another update on the underwriting. Defendants Levy and Gainey, and on behalf of Millichap and/or Millichap Nevada, failed to make any disclosure to [the Buyer] or its agents that [the liquor store] was either in the process of moving its liquor license and/or planning on vacating the Property.

Allegedly another prospective purchaser of the shopping center had advised the Real Estate Agents that it did not purchase the center because it became aware of the tenant's planned move. Harrison allegedly assured the Buyer that the tenant did not plan to move. Finally, the Buyer alleges that additional inquiries about the status of the tenant did not produce a disclosure of the tenant's plans to move.

5

The Buyer allegedly predicated the value of the shopping center on the tenant's continued presence and pleaded that it had "relied on the statements and assurances made by Defendant Harrison that [the liquor store] would not be vacating the Tenant Space in deciding to purchase such Property." Allegedly, no one disclosed that the tenant had entered into a lease at another shopping center and had begun the process of obtaining approval from governmental agencies to move and to acquire another liquor license for it new location.

After completing its due diligence, the Buyer's agent entered into the Purchase Agreement for the shopping center, and the Buyer later closed on the purchase. About a year after the closing, the liquor store vacated its space in the shopping center.

The petition alleges the consequences of the failure to disclose the tenant's imminent departure as follows: "[The Buyer] and [the Buyer's] agents relied on the statements and assurances made by Defendant Harrison that [the liquor store] would not be vacating the Tenant Space in deciding to purchase such Property."

Predicated on the described allegations, the Buyer sued the Real Estate Agents under the real estate fraud provision of the Texas Business and Commerce Code. *See* Tex. Bus. & Comm. Code Ann. § 27.01. That cause of action turned on the contentions that

> [the Agents] benefited from the sale of the Property to [the Buyer] by not disclosing that a third[ ]party's representations were false. [The Agents] failed to disclose to [the Buyer] after an express request for full

6

disclosure as to whether the largest tenant at the Property (based on rent paid) would remain at the Property and was not planning to vacate the Property. [The Agents'] silence was calculated to avoid losing a sale upon which [the Agents] were to earn commissions. Particularly as prior prospective purchasers had pulled out of any sale for similar, related concerns. [The Buyer] relied and/or reasonably relied on [the Agents'] conduct as [the Agents'] nondisclosure indicated that [the liquor store] was remaining at the Property.

Though phrased with slight differences, the Buyer's petition also alleged a cause of action against the Real Estate Agents for fraud by nondisclosure on the same basis as the statutory fraud claim. The pleading of this cause of action included the allegations that "[b]y failing to provide such disclosures, [the Agents] intended to induce [the Buyer] into purchasing the Property." As discussed below, we construe these causes of action to be, in essence, claims that the Buyer was fraudulently induced to purchase the shopping center.

## III. Procedural Background

The Real Estate Agents answered the Buyer's suit and several months later moved to compel arbitration. The motion to compel arbitration asserted that although the Real Estate Agents were not signatories of the Purchase Agreement, various theories permitted them to invoke the arbitration provision contained in the Purchase Agreement, including agency and third-party beneficiary status. The motion attached a declaration that authenticated a copy of the Purchase Agreement and included it as an exhibit. The motion also relied on various allegations from the Buyer's first amended petition.

7

The Buyer filed a response that challenged the legal arguments relied on by the Real Estate Agents. The Buyer did not challenge the authenticity of the copy of the Purchase Agreement attached to the Real Estate Agents' motion to compel and instead referred to its terms. The only evidence attached to the Buyer's response was an affidavit from the Buyer's agent that stated that he had not entered into any agreement with the Real Estate Agents and had "not agree[d] to arbitrate any dispute with or claims against" the Real Estate Agents.

The trial court conducted a hearing on the Agents' motion to compel. That hearing lasted only a few minutes, and neither party adduced any evidence beyond what had been filed with the motion to compel and the response. The trial court later signed an order denying the Agents' motion to compel. The Agents then perfected this interlocutory appeal.

## IV. Preliminary Question: Do we have an adequate record to determine whether the Buyer's claims should have been sent to arbitration?

Before we can address the Agents' four issues challenging the denial of their motion to compel, we must first decide whether there was any evidence before the trial court that we can review or whether our review ends. The Buyer argues that

> [the Agents] failed to meet their burden by failing to present any evidence supporting their arbitration claim. [The Agents] brought no evidence to an evidentiary hearing and only offered argument instead. That alone is enough to affirm the trial court's order[,] and it can hardly be an abuse of discretion for a court to deny a motion requiring evidence when no such evidence is presented.

8

As we explain below, we conclude that there was evidence before the trial court, and thus a record exists for us to review.

Texas procedural law dictates what mechanisms a trial court uses in deciding questions such as whether an arbitration agreement binds a nonparty. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding) ("Whether an arbitration agreement is binding on a nonparty is one of those gateway matters. Texas courts apply Texas procedural rules in making that determination." (footnotes omitted)). A motion to compel arbitration is initially presented to the trial court in a summary proceeding. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.021(b) ("If a party opposing an application . . . denies the existence of the agreement, the court shall summarily determine that issue. The court shall order the arbitration if it finds for the party that made the application. If the court does not find for that party, the court shall deny the application."). The proceeding moves to an evidentiary hearing only if there are fact issues concerning the existence of the agreement. As we recently explained,

> In the trial court, motions to compel arbitration are treated somewhat similarly to motions for summary judgment. [*Doe v. Columbia N. Hills Hosp. Subsidiary, L.P.*, 521 S.W.3d 76, 81 (Tex. App.—Fort Worth 2017, pet. denied)] (citing *In re Jebbia*, 26 S.W.3d 753, 756–57 (Tex. App.— Houston [14th Dist.] 2000, orig. proceeding); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268–69 (Tex. 1992)). The same evidentiary standards apply, and the party alleging that an arbitration agreement exists must present summary proof that the dispute is subject to arbitration (through affidavits, pleadings, discovery, or stipulations), and the party resisting arbitration may contest the opponent's proof or present evidence supporting the elements of a defense to enforcement. *Id.* If the

9

evidence raises a genuine issue of material fact, the trial court must conduct an evidentiary hearing to resolve the factual dispute. *Id.* (*citing Jack B. Anglin Co.*, 842 S.W.2d at 269; *In re Estate of Guerrero*, 465 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2015, pet. denied)).

*Hawk Steel Indus., Inc. v. Stafford*, No. 02-19-00040-CV, 2019 WL 3819506, at *2 (Tex. App.—Fort Worth Aug. 15, 2019, pet. filed) (mem. op.); *see Weekley Homes*, 180 S.W.3d at 130 (stating that Texas's procedural rules "call for determination by summary proceedings, with the burden on the moving party to show a valid agreement to arbitrate").

As it is entitled to do, the trial court conducted a summary hearing on the motion to compel arbitration. As noted, the Real Estate Agents filed a declaration that authenticated the Purchase Agreement that was the basis of the motion to compel and also cited to the Buyer's first amended petition, from which we drew our description of the underlying facts. The Buyer responded to the motion to compel and challenged the Agents' argument that the facts set out in the motion to compel established the Real Estate Agents' right to compel arbitration. But that response did not point to any fact issues that the trial court would have to resolve to determine arbitrability. The order denying the motion to compel recites that the trial court considered "the evidence" in making its ruling. The live petition and the Purchase Agreement provided the trial court with the means to make a summary determination of the motion to compel and give us an adequate record to determine the questions of arbitrability presented in this appeal.

10

With respect to the authenticity of the Purchase Agreement, which contains the arbitration clause that the Real Estate Agents relied on, it became part of the evidence before the trial court. The Agents attached the Purchase Agreement to a declaration stating that it was a true and correct copy of the original. This declaration was sufficient to establish the authenticity of the agreement. *See* Tex. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."); *Branch Law Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("Under the summary judgment standard applicable in this arbitration context, copies of documents must be authenticated for them to constitute competent summary judgment evidence. A properly sworn affidavit stating that the attached documents are true and correct copies of the original authenticates the copies so they may be considered as summary judgment evidence." (internal citations omitted)).

Even if we were to find the authentication lacking, the Buyer never challenged the authenticity of the agreement and instead took the agreement as authentic. We have held that when there is no challenge to how the party moving to compel arbitration attempts to authenticate an agreement in the trial court, we cannot affirm the denial of a motion to compel based on a challenge to that attempt that was never raised in the trial court. *See Geo-Tech Found. Repair v. Leggett*, No. 02-16-00289-CV, 2017 WL 1173840, at *3 (Tex. App.—Fort Worth Mar. 30, 2017, no pet.) (mem. op.)

11

("Under these specific circumstances, because Leggett never denied in the trial court that an arbitration agreement existed and assumed or acknowledged that one existed, we cannot affirm the trial court's order on the basis of Geo-Tech's failure to present competent evidence of an agreement to arbitrate, as Leggett argues."); *see also Branch Law Firm,* 532 S.W.3d at 15 (stating that only an objection to the complete absence of authentication may be raised for the first time on appeal).

The other evidence that the Real Estate Agents relied on is the Buyer's first amended petition. The Buyer never tells us why the statements in its live pleading are not judicial admissions that we and the trial court could rely on.[2] Instead, the Buyer appears to admit that certain statements in its pleadings are admissions but then shifts

---

[2]The Buyer does not give any reason why the statements in its pleading do not conform to the standards necessary to consider them as judicial admissions. As this court has previously explained,

> A judicial admission must be a clear, deliberate, and unequivocal statement, and occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (quoting *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex. 1996)[,] and *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 884 (Tex. App.—San Antonio 1996, writ denied)). As long as the statement stands unretracted, it must be taken as true by the court and the jury. *See Lee v. Lee*, 43 S.W.3d 636, 641 (Tex. App.—Fort Worth 2001, no pet.). Assertions of fact, not pleaded in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001).

*Martinez-Gonzalez v. EC Lewisville, LLC*, No. 02-17-00122-CV, 2018 WL 1192242, at *9 (Tex. App.—Fort Worth Mar. 8, 2018, pet. denied) (mem. op.).

12

to an argument that goes to one of the legal questions before us instead of whether it is bound by the statements in its pleadings.[3] The Buyer's argument is not that its pleading fails to show an interrelationship between the underlying sales transaction and the agreement but that the arbitration clause does not embrace a controversy involving the underlying transaction. That is not a question of whether there is proof of the underlying facts; it is a legal question that we will deal with in due course.

Thus, we hold that the Purchase Agreement was before the trial court and that the Buyer's first amended petition outlined the facts of the controversy sufficiently for the Real Estate Agents to explain why the claims were allegedly arbitrable and for us to review the trial court's decision that they were not.

---

[3]The Buyer's argument is as follows:

[The Agents'] argument that [the Buyer's] pleadings satisfy its burden is incorrect. While a court can rely on judicial admissions in pleadings, here the only admissions relevant are that the "Buyer" under the sales contract acted as [the Buyer's] agent in locating the Property and, ultimately, signed the sales contract in its own name, and that [the Agents] were the agents of the "Sellers" for the sale. *Assuming [the Agents] were relieved of their burden to prove Ali Rabiee's agency status, [the Agents] still have not provided evidence sufficient to link the claims of their conduct to the sales contract. The agreement covers claims arising under or relating to the "Agreement," not the sales transaction. Without that link, [the Agents'] proposition expands the agreement to allow any person connected with the sale of the Property to invoke the arbitration provision. Under [the Agents'] theory, Harrison would also be able to enforce the arbitration clause because his conduct was "related to" the sale of the Property.* [Emphasis added.]

13

## V. Central Question: Did the trial court abuse its discretion by denying the Agents' motion to compel?

Having determined that we have an adequate record to review, we now turn to the Agents' main issue, which they phrase as follows: "Did the District Court err in denying the Marcus & Millichap Appellants' Motion to Compel Arbitration under the arbitration provision in the real estate purchase agreement?" The Agents argue that to reverse the district court and compel arbitration, we must answer three questions affirmatively:

- First, is the Buyer bound by the arbitration provision?

- Second, can the Agents enforce the arbitration provision?

- Third, does the arbitration provision apply to the Buyer's claims?

We answer each of these questions in the affirmative as set forth below.

### A. Standard of Review

As a general proposition, we review the trial court's denial of a motion to compel arbitration under an abuse-of-discretion standard. *Apache Corp. v. Wagner*, Nos. 02-18-00132-CV, 02-18-00135-CV, 2018 WL 6215739, at *6 (Tex. App.—Fort Worth Nov. 28, 2018, pet. denied) (mem. op.). However, "we review de novo a trial court's determination regarding whether a valid agreement to arbitrate exists and its construction of an unambiguous arbitration agreement." *Id.* And the question of whether a nonsignatory can compel arbitration implicates the existence of an agreement to arbitrate, which is another question that we review de novo.

*ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *3 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.) (mem. op.) (citing *In re Rubiola*, 334 S.W.3d 220, 223–24 (Tex. 2011) (orig. proceeding), and *Weekley Homes*, 180 S.W.3d at 130).

In the broadest terms, "[a] party seeking to compel arbitration . . . must establish (1) the existence of a valid arbitration agreement and (2) that the claims at issue fall within that agreement's scope." *Id.* at *2 (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 171.021(a) ("A court shall order the parties to arbitrate on application of a party showing:  (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate."). We have already outlined that when the determination does not involve fact questions that prompt a full evidentiary hearing, the trial court looks to the affidavits, pleadings, discovery, or stipulations in making its summary determination of the arbitration question.

**B.** **There are gateway issues that we must resolve to determine whether the Buyer is obliged to arbitrate its claims against the Real Estate Agents.**

Here, we deal with what is in essence a dispute regarding whether a nonsignatory to an arbitration agreement may be compelled to arbitrate with other nonsignatories to the agreement. We must deal with the "gateway issues" that this question presents before we can turn to the question of whether the arbitration clause in the agreement embraces the claims made in the Buyer's suit.

A gateway issue deals with the validity and enforceability of an arbitration agreement and is most times a matter for the trial court—rather than the arbitrator—to decide and for us to review; no one in this appeal contends otherwise. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding) ("Under the FAA, whether an arbitration agreement binds a nonsignatory is a gateway matter to be determined by courts rather than arbitrators unless the parties clearly and unmistakably provide otherwise." (citing *Weekley Homes*, 180 S.W.3d at 130)); *Friedman & Feiger, LLP v. Massey*, Nos. 02-18-00401-CV, 02-18-00402-CV, 2019 WL 3269325, at *7 (Tex. App.—Fort Worth July 18, 2019, pet. filed) (mem. op. on reh'g) ("Ordinarily, the trial court retains the power to rule on gateway issues such as the validity and enforceability of an arbitration agreement."); *see also Robinson v. Home Owners Mgmt. Enters., Inc.*, No. 18-0504, 2019 WL 6223128, at *9 (Tex. Nov. 22, 2019) ("Concluding that the threshold issue here is a gateway matter also aligns, at least by analogy, with our view that whether a nonsignatory is bound to an arbitration agreement is a gateway matter for judicial determination.").

Whether a nonsignatory can compel arbitration pursuant to an arbitration clause questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide. *Rubiola*, 334 S.W.3d at 223–24; *Hart of Tex. Cattle Feeders, LLC v. Bonsmara Nat. Beef Co.*, 583 S.W.3d 705, 710 (Tex. App.—Amarillo 2019, pet. granted) (mem. op.).

16

The gateway determination of whether a party has agreed to arbitrate is a matter controlled by contract interpretation principles. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018) ("Whether parties have agreed to arbitrate is a gateway matter ordinarily committed to the trial court and controlled by state law governing 'the validity, revocability, and enforceability of contracts generally.'" (footnote omitted) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902 (2009))); *In re W. Dairy Transport, L.L.C.*, 574 S.W.3d 537, 545 (Tex. App.—El Paso 2019, orig. proceeding [mand. denied]) ("Determining whether there is a valid agreement is a question of state contract law and is a gateway matter for the court.").[4]

---

[4]The parties do not focus on questions of whether federal or state law controls the determinations that we make. The extent of the parties' guidance comes from a footnote in the Real Estate Agents' brief that states in part, "The parties to the Purchase Agreement did not specify arbitration under either the Federal Arbitration Act or the Texas Arbitration Act; the transaction does not involve interstate commerce; and the Agreement states that the laws of Texas apply. As a result, the TAA and the FAA both apply." The Buyer is equally indifferent to any distinctions between federal and state law, claiming "that both the Federal Arbitration Act and the Texas Arbitration Act apply but [that] strict determination is not necessary as both parties invoke the same standards." Thus, the parties point to no distinctions in federal and state law that are pivotal. In this situation, we cite cases applying both the federal and state arbitration acts, operating under the assumption that their principles are consonant. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 n.14 (Tex. 2015) (stating that the general contract provided for arbitration under the TAA and that each of the defendants sought to compel arbitration under that Act, and noting that "no party argues that the FAA preempts the TAA on any issue in this case[] or that the TAA and FAA materially differ on any such issue. We therefore presume that the TAA governs, but we may find guidance in court decisions addressing both acts").

In making the determination of whether nonsignatories are bound, Texas law has articulated several theories that permit binding a nonsignatory to arbitrate. Specifically, courts have "articulated six scenarios in which arbitration with non-signatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary." *Jody James Farms*, 547 S.W.3d at 633.

### 1. The Buyer is bound by the arbitration agreement.

As a specific focus of their second issue, the Real Estate Agents contend that the Buyer is bound by the arbitration clause in the Purchase Agreement. The Buyer does not put up much of a fight that it is bound by the Agreement; the Buyer admits that its pleading states that the person who signed the contract was its agent.[5] The Buyer's first amended petition contains the following statements:

> After conducting its due diligence, [the Buyer's] agent, Ali Rabiee, entered into the Commercial Earnest Money Contract for the purchase of the Property (the "Sales Contract") on behalf of [the Buyer]. . . . Ali Rabiee, [the Buyer's] agent, entered into the Sales Contract on or about May 9, 2014, and [the Buyer] closed on the purchase of the Property on or about July 9, 2014.

[5]The Buyer's brief states,

While a court can rely on judicial admissions in pleadings, here the only admissions relevant are that the "Buyer" under the sales contract acted as [the Buyer's] agent in locating the Property and, ultimately, signed the sales contract in its own name, and that [the Agents] were the agents of the "Sellers" for the sale. *Assuming [the Agents] were relieved of their burden to prove Ali Rabiee's agency status*, [the Agents] still have not provided evidence sufficient to link the claims of their conduct to the sales contract. [Emphasis added.]

18

Again, we look to principles of agency and contract law to determine whether the Buyer is bound by the agreement. *See id.* at 640 ("No party may be compelled to arbitrate unless they have agreed to arbitrate or are bound by principles of agency or contract law to do so."). Even if the status of the Buyer's agent was not disclosed in the Purchase Agreement and even if the Buyer was an undisclosed principal, it is bound by the Purchase Agreement under principles of agency law. As the Corpus Christi–Edinburg court has held,

> An agent need not disclose his or her principal's identity in order to act on behalf of that principal. *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 546 (Tex. 2003). An agent may make a contract for an undisclosed principal in his own name, and the latter may sue or be sued on the contract. *Id.* (citing *First Nat'l Bank of Wichita Falls v. Fite*, 131 Tex. 523, 115 S.W.2d 1105, 1109–10 (1938); Restatement (Second) of Agency § 186 cmt. c).

*First Nat'l Acceptance Co. v. Bishop*, 187 S.W.3d 710, 714–15 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.). Here, though the Buyer's name does not appear on the Purchase Agreement, and for that reason it may literally be termed a nonsignatory, it was in essence a party to the agreement by virtue of its admission that the party signing the agreement acted as its agent. Thus, we dispose of the first gateway issue by holding that the Buyer is bound by the Purchase Agreement and its arbitration provision, and we sustain the Agents' second issue.

## 2. The Real Estate Agents can enforce the arbitration agreement as third-party beneficiaries.

The knottier gateway question arises in the Real Estate Agents' third issue that involves whether they can enforce the arbitration provision. They rely on three of the theories that permit a nonsignatory to compel the arbitration of claims made against them: agency, third-party beneficiary, and direct-benefits estoppel. We resolve this issue by concluding that the Agents were third-party beneficiaries of the Purchase Agreement. This conclusion obviates the need to discuss whether the Real Estate Agents, as a group, may rely on the principles of agency to claim that the Purchase Agreement covers the claims against them. We will not discuss direct-benefits estoppel because we can find no reference to that theory in the Real Estate Agents' motion to compel arbitration.

As they argued to the trial court, the Real Estate Agents argue on appeal that they are third-party beneficiaries of the Purchase Agreement and thus are able to enforce that agreement's arbitration clause even though they are nonsignatories. We agree.

The unique terms of the Purchase Agreement contain clauses that specifically reference the Real Estate Agents and establish legal duties that run to them from the signatories to the Purchase Agreement. In this circumstance, the Purchase Agreement reveals an intent that meets the test for a third-party to be able to enforce an arbitration agreement.

20

### a. How we determine whether a nonsignatory to a contract is a third-party beneficiary

The overarching test to determine whether a party is a third-party beneficiary states that "[a] third party may recover on a contract made between other parties only if the parties intended to secure some benefit to that third party[] and only if the contracting parties entered into the contract directly for the third party's benefit." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). As with every other question of contact interpretation, we look to the intention of the parties expressed in the language of all the provisions of the contract to answer this question. *Id.*; *see also ConocoPhillips Co.*, 2012 WL 1059084, at *6 ("In determining whether the parties intended to benefit a third[ ]party, courts look to the entire agreement, giving effect to all of its provisions."). In the context of arbitration, "[l]ike other contracts, arbitration agreements may also be enforced by third-party beneficiaries, so long as 'the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit.'" *Jody James Farm*, 547 S.W.3d at 635 (quoting *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding)).

The rules of interpretation targeted to the determination of the third-party beneficiary status demonstrates a strict view of how a contract must create the status. That status cannot be created by implication. *MCI Telecomms. Corp.*, 995 S.W.2d at 651. The intention to create third-party beneficiary status "must be clearly and fully

spelled out or enforcement by the third party must be denied." *Id.* "Consequently, a presumption exists that parties contracted for themselves unless it 'clearly appears' that they intended a third party to benefit from the contract." *Id.* The strictness of these rules prompts "a presumption against, not in favor of, third-party beneficiary agreements." *Id.* at 652.

Traditionally, there are two categories of third-party status in a contract: donee status and creditor-beneficiary status. *Id.* at 651. The former is not a third-party beneficiary while the latter is. *Id.* The distinction between the types of beneficiaries turns on whether the contract establishes a legal duty running to the third party. *Id.* Without that duty, the benefit that comes to the third party is a "pure donation" that is incidental to the contract's terms but does not support an intent to give the party rights in the contract. *Id.* "If, on the other hand, that performance will come to him in satisfaction of a legal duty owed to him by the promisee, he is a creditor beneficiary." *Id.* "[T]his duty may be an 'indebtedness, contractual obligation[,] or other legally enforceable commitment' owed to the third party." *Id.* As the supreme court recently described the relationship that must be established to confer third-party beneficiary status for an arbitration claim, "The benefit must be more than incidental, and the contracting parties' intent to 'confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied.'" *Jody James Farms*, 547 S.W.3d at 635 (quoting *MCI Telecomms. Corp.*, 995 S.W.2d at 651).

22

And though the prerequisites for finding third-party beneficiary status are strict, they are not untempered. For example, a third party seeking beneficiary status need not show that the contract was made solely for its benefit. *See ConocoPhillips Co.*, 2012 WL 1059084, at *6. Nor does "a clear showing of intent to benefit a third[ ]party . . . require the phrase 'third-party beneficiary' or any other magic words." *Id.* (citing *City of Houston v. Williams*, 353 S.W.3d 128, 146 (Tex. 2011)).

Also, the presumption against third-party beneficiary status diminishes when the contract provides a legal duty to the third party, such as indemnification for the third party. Specifically, "this presumption [against third-party beneficiary status] has less force when . . . the contractual rights relate to dispute resolution of specific claims, as to which a contracting party owes a duty of indemnification and defense to the third-party claiming the benefit." *Id.* at *7. The existence of a right to indemnification creates the possibility that one of the signatories to the contract might have to "ultimately, though indirectly" be paid by the other signatory for a claim against the beneficiary. *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 777 (Tex. App.—Beaumont 2008, orig. proceeding [mand. denied]) (per curiam). That circumstance indicates an intent to give the nonsignatory the benefit of the signatory's promise to arbitrate because "[r]ecognition of a right to performance in [the nonsignatory] of the arbitration promise effectuates the intent of the parties to arbitrate their claims and disputes." *Id.*

The Real Estate Agents place primary reliance on the two cases just cited to argue that the Purchase Agreement accords them third-party beneficiary status and the corresponding ability to enforce the Purchase Agreement's arbitration provision. *See ConocoPhillips Co.*, 2012 WL 1059084, at *3–7; *Citgo Petroleum Corp.*, 248 S.W.3d at 776–77. Both cases had similar fact patterns that involved employees of a contractor who had filed injury claims against a property owner who had contracted with their employer. *See ConocoPhillips Co.*, 2012 WL 1059084, at *3–7; *Citgo Petroleum Corp.*, 248 S.W.3d at 773–78. Both cases relied on three similar conclusions to hold that the property owner was a third-party beneficiary with the right to enforce the arbitration clause in the suing employee's contract with his employer. *See ConocoPhillips Co.*, 2012 WL 1059084, at *3–7; *Citgo Petroleum Corp.*, 248 S.W.3d at 776–77. For example, the three grounds that *ConocoPhillips* relied on were as follows:

- The language of the arbitration agreement embraced claims against the property owner:

> The second category of claims identified in [the employee's] arbitration agreements expressly mandates arbitration of disputes in which [the employer] is not a party; that obligation to arbitrate such claims has no affect if it cannot be enforced by a third[ ]party. This language is therefore some indication that [the employer] intended for clients like [the property owner] to have the right to enforce the arbitration agreements.

2012 WL 1059084, at *6.

- The employer's contract with the property owner obligated the employer to indemnify and hold the property owner harmless and to defend against the employee's claims against the property owner. *Id.* at *7. As noted, this

24

obligation softened the presumption that the employer and the employee agreed to arbitration only for their own benefit. *Id.*

- The combination of the first two factors demonstrated that the right of the property owner to enforce the arbitration clause was not incidental. *Id.* Specifically, the property owner's

> right to enforce the arbitration agreements is necessary to effectuate one of [the employer's] apparent intended purposes in entering into the agreement: arbitration of not only the employee's claims against [the employer] but also the employee's claims against [the employer's] clients, whom [the employer] has, at least in some cases, agreed to indemnify and defend in such matters.

*Id.*

Here, the Buyer argues that the differences in the language of the Purchase Agreement from those reviewed by *ConocoPhillips* and *Citgo* show that they do not support the Real Estate Agents' claim for third-party beneficiary status. As we explain below, we see these opinions as more similar than dissimilar to this controversy, and thus they support our conclusion that the Real Estate Agents are third-party beneficiaries who may invoke the Purchase Agreement's arbitration clause.

### b. The terms of the Purchase Agreement that guide our determination of third-party beneficiary status

The Purchase Agreement is a unique creation. The Real Estate Agents are not signatories, but they figure prominently in the Purchase Agreement's terms. Those terms underlie our conclusion that the Real Estate Agents are third-party beneficiaries of the Purchase Agreement and its arbitration clause.

To recap the terms of the Purchase Agreement, the first item that appears on the Purchase Agreement is the name "Marcus & Millichap Real Estate Investment Services." The Purchase Agreement repeatedly uses the term "Agent," and that term is specifically defined as follows:

> The Term "Agent" refers to Marcus & Milllchap Real Estate Investment Services of Texas, Inc. and/or Other Broker, if applicable as set forth below. Each Agent only has duties to the party they represent as identified below. If either Agent is acting as an Intermediary, then that Agent will only have the duties of an Intermediary[,] and both Buyer and Seller consent by their signature[s] below that Agent has provided all proper notices and disclosures to this sale[.]

The Purchase Agreement then describes Marcus & Millichap Real Estate Investment Services as representing the seller.

Provisions of the Purchase Agreement specifically describe the Real Estate Agents' duties, including a disclaimer that among other things deals with limitations on the Agents' duty to disclose the type of information that is the crux of the Buyer's claims in the lawsuit that it filed—the shopping center's largest tenant's imminent move. The disclaimer provides in part that "Buyer and Seller acknowledge that Agent has not made any investigation, determination, warranty, or representation with respect to . . . any of the following: (a) the financial condition or business prospects of the Property, of any occupant of the Property, or *[of] any occupant's intent to continue or renew its occupancy [of] the Property . . . .*" [Emphasis added.] The provision concludes with the following paragraph:

26

**BUYER AGREES THAT INVESTIGATION AND ANALYSIS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOREGOING MATTERS, ARE BUYER'S SOLE, INDEPENDENT RESPONSIBILITY AND THAT BUYER SHALL NOT HOLD AGENT RESPONSIBLE THEREFOR[]. BUYER AGREES AND ACKNOWLEDGES THAT BUYER HAS NOT RELIED UPON ANY REPRESENTATION OF AGENT IN CONNECTION WITH BUYER'S PURCHASE OF THE PROPERTY.**

The Purchase Agreement then limits the Agents' responsibility to investigate and advise about legal, tax, engineering, construction, or hazardous materials issues.

Continuing the enumeration of the Agents' responsibilities and rights, the Purchase Agreement contains the following provision that limits its liability for concealing information and provides for the parties to hold the Agents harmless should such a claim be made based on representations about the property:

**LIMITATION OF AGENT[S'] LIABILITY: EXCEPT FOR AGENT[S'] SOLE GROSS NEGLIGENCE OR SOLE WILLFUL MISCONDUCT, SELLER AND BUYER AGREE TO HOLD THE AGENTS HARMLESS FROM ANY DAMAGES, CLAIMS, COSTS[,] AND EXPENSES RESULTING FROM OR RELATED TO ANY PARTY FURNISHING TO THE AGENTS OR BUYER ANY FALSE, INCORRECT[,] OR INACCURATE INFORMATION WITH RESPECT TO THE PROPERTY OR SELLER'S CONCEALING ANY MATERIAL INFORMATION WITH RESPECT TO THE CONDITION OF THE PROPERTY, TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE AGENTS' LIABILITY FOR ERRORS OR OMISSIONS, NEGLIGENCE, OR OTHERWISE, IS LIMITED TO THE RETURN OF THE FEE, IF ANY, PAID TO THE RESPONSBILE AGENT PURSUANT TO THIS CONTRACT. *IN ADDITION, SELLER AND BUYER AGREE TO DEFEND AND HOLD THE AGENTS PARTICIPATING IN THIS TRANSACTION HARMLESS FROM AND AGAINST ANY AND ALL LIABILITIES, CLAIMS, DEBTS, DAMAGES,***

*COSTS[,] AND EXPENSES INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEY[']S FEES AND COURT COSTS, RELATED TO OR ARISING OUT OF OR IN ANY WAY CONNECTED TO REPRESENTATIONS ABOUT THE PROPERTY OR MATTERS THAT SHOULD BE ANALYZED BY EXPERTS.* [Emphasis added in italics.]

The page of the Purchase Agreement containing the terms outlining and limiting the Agents' responsibilities concludes with the arbitration provision that provides, "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by final binding arbitration . . . ."

> **c. Why we hold that the Real Estate Agents are third-party beneficiaries of the Purchase Agreement and may enforce its arbitration clause**

The limitation of liability provision that we have just quoted is an indemnity clause. *See Audubon Indem. Co. v. Custom Site-Prep, Inc.*, 358 S.W.3d 309, 319 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("'An indemnity agreement is a promise to safeguard or hold the indemnitee harmless against either existing and/or future loss liability' and provides the indemnitee with a cause of action to recover against the indemnitor." (quoting *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993))). This provision creates a legal duty that runs to the Real Estate Agents, makes them third-party beneficiaries, and "indicates an intent" to permit them to gain the benefit of the arbitration clause in recognition of the fact that "a right to performance in [the nonsignatory] of the arbitration promise effectuates the intent of

28

the parties to arbitrate their claims and disputes." *See Citgo Petroleum Corp.*, 248 S.W.3d at 777.

The Buyer does not appear to take exception to the conclusion that the indemnity provisions would make the Agents third-party beneficiaries of the Purchase Agreement but narrows its attack to whether they are third-party beneficiaries of the arbitration clause. That argument emphasizes that the arbitration clauses in *ConocoPhillips* and *Citgo* mandated the arbitration of disputes to which the employer—the other signatory—was not a party. *See ConocoPhillips Co.*, 2012 WL 1059084, at *6; *Citgo Petroleum Corp.*, 248 S.W.3d at 775–76.

This distinction exists, but we conclude that it is not pivotal. The arbitration clause in the Purchase Agreement does not specifically mention claims against someone other than the signatories, but its language is nonetheless expansive enough to cover those claims: "*Any controversy* or claim arising out of or *relating to this Agreement*, or the breach thereof, *shall be settled by final binding arbitration . . . .*" [Emphasis added.] In its literal terms, enforcement of the indemnification provision and the other clauses that relate to the Agents' duties are matters relating to the Purchase Agreement. And the claims in the Buyer's suit—that the Agents should have disclosed the liquor store's plan to move—directly implicate those clauses as they appear to clash with the Purchase Agreement's provision that the Real Estate Agents have "not made any investigation, determination, warranty, or representation with respect to . . . any of the following: (a) the financial condition or business

29

prospects of the Property, of any occupant of the Property, or *[of] any occupant's intent to continue or renew its occupancy [of] the Property . . . .*" [Emphasis added.]

Our conclusion that the corporate Real Estate Agent is a third-party beneficiary of the Purchase Agreement also embraces the individual agents, Gainey and Levy. As the Buyer acknowledges in its petition, these individuals are the human instruments of their corporate principal. Usually, agents may claim the right to arbitrate when their principal may do so. As the Texarkana court has explained,

> The Texas Supreme Court has observed that contracting parties generally intend to include disputes about their agents. *[In re] Vesta Ins. Grp., Inc.*, 192 S.W.3d [759,] 762–63 [(Tex. 2006) (orig. proceeding) (per curiam)]. Agents "may sometimes invoke an arbitration clause even if they themselves are nonsignatories and a claimant is not suing on the contract." *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (orig. proceeding) (per curiam); *In re Wells Fargo Bank, N.A.*, 300 S.W.3d 818, 825 (Tex. App.—San Antonio 2009, orig. proceeding). An arbitration clause cannot be avoided by recasting the claims as torts against an owner, officer, agent, or affiliate, and "it is impractical to require every corporate agent to sign or be listed in every contract." *Kaplan Higher Educ. Corp.*, 235 S.W.3d at 209.

*Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 81 (Tex. App.—Texarkana 2014, no pet.) (op. on reh'g).

At bottom, we glean an intent that the Real Estate Agents are third-party beneficiaries of the arbitration provision because the seller, who is not included in the Buyer's suit, may well be roped into the suit by virtue of its indemnity obligations. In that circumstance, if the arbitration provision protects only the seller and not the party to whom it owes a duty to indemnify, the right to arbitration will be hollow

comfort. And the seller in this case faces exactly that situation. Though not a party to the suit below, should the claims against the Agents not be arbitrable, the seller is deprived of the dispute resolution mechanism it believed that it had and may well have to pay the expenses of full-blown litigation because of the indemnity obligation contained in the Purchase Agreement. The arbitration provision does not express as clear an intent as the provisions did in *Citgo* and *ConocoPhillips* to include claims other than those involving the signatories, but the arbitration clause's terms still embrace those claims and evidence the justification relied on by the two prior opinions for their holdings.

For the sake of thoroughness, we address the Buyer's last argument that is directed to the inadequacy of the record presented by the Real Estate Agents and how that supposedly impacts our ability to decide the third-party beneficiary issue:

> Without evidence that the parties intended that [the Agents] benefit from the arbitration provision, [the Agents] cannot support their arbitration request by claiming a right to enforce the limitation of liability. Here[,] there was no evidence the parties intended the agents to be third-party beneficiaries of the entire contract or arbitration clause.

If the Buyer is suggesting that there must be extrinsic evidence backstopping the conclusion that the Purchase Agreement makes the Real Estate Agents third-party beneficiaries, we disagree. Here, we rely on the terms of the agreement for our de novo review, and the Buyer does not make an argument that the provisions contain an ambiguity that would allow us to consider extrinsic evidence. Moreover,

31

we doubt that the Buyer would have countenanced the admission of parole testimony about the meaning of the Purchase Agreement's unambiguous terms.

Accordingly, we conclude that Purchase Agreement makes the Real Estate Agents third-party beneficiaries of the Purchase Agreement's arbitration provisions, and we sustain the Agents' third issue. Because of this disposition, we do not reach the questions of whether their status as Agents permits them to enforce the clause. *See* Tex. R. App. P. 47.1. We have already noted that the Agents did not raise the issue of direct-benefits estoppel in the trial court, and we will not address that theory.

**C.      The claims made by the Buyer against the Real Estate Agents fall within the scope of the arbitration clause in the Purchase Agreement.**

We have now resolved the gateway issues of whether the Buyer is bound by the Purchase Agreement and whether the Real Estate Agents may invoke the Purchase Agreement's arbitration provision. We turn now to the Agents' fourth issue regarding whether the scope of the arbitration provision embraces the claims made in the Buyer's suit. We conclude that it does. As we have noted, the provision is broad, covering claims that relate to the Purchase Agreement. The Buyer treads lightly in how it alleges the fraud claims against the Real Estate Agents, but we conclude that they are fraudulent-inducement claims. Such claims relate to the Purchase Agreement and thus fall within the scope of the arbitration clause.

The strictness of the rules of interpretation and the adverse presumption that we applied in determining third-party beneficiary status reverse polarity when we

examine the question of the scope of the arbitration clause. Our review is still de novo, but now the standards strain to interpret the clause so that it will cover the claim. *See BBVA Compass Inv. Sols., Inc. v. Brooks*, 456 S.W.3d 711, 717 (Tex. App.—Fort Worth 2015, no pet.). We focus our review on the factual allegations in the petition, not the labels of the causes of action; to implement this rule, we will not permit a party to evade the coverage of an arbitration clause by artful pleading. *Id.* at 718. "A strong presumption favors arbitration, and courts resolve any doubts about an agreement's scope . . . in favor of arbitration." *Id.* Finally, "[u]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation [that] would cover the dispute at issue, a court should not deny arbitration." *Id.* Our approach to interpretation follows the standard contract interpretation principles that we applied in deciding the gateway issues.[6]

---

[6]As this court has previously explained,

Whether an arbitration agreement imposes a duty to arbitrate a particular dispute is a matter of contractual interpretation and a question of law for the court. *The Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 229–30 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Courts examine the language in an arbitration agreement in context and give the language its plain grammatical meaning. *In re Wachovia Sec., LLC*, 312 S.W.3d 243, 247 (Tex. App.—Dallas 2010, orig. proceeding). When construing a contractual provision, the provision is reviewed in light of the entire contract. *See Clark v. Cotten Schmidt, L.L.P.*, 327 S.W.3d 765, 772–73 (Tex. App.—Fort Worth 2010, no pet.).

*BBVA*, 456 S.W.3d at 719.

The Fourteenth Court recently catalogued the cases that hold that an arbitration clause that embraces claims relating to an agreement subsumes claims that a party was fraudulently induced to enter into the agreement:

> Claims of this kind [alleging misrepresentation and the omission to state material facts], which allege fraudulent inducement, are within the scope of an agreement requiring the arbitration of claims arising out of or relating to the agreement. *See Dewey v. Wegner*, 138 S.W.3d 591, 602–03 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that plaintiff's claim that he was fraudulently induced to enter into the subscription agreement by the Deweys' representations is within the scope of the agreement, which required arbitration of any claim arising out of or relating to this subscription agreement); *Capital Income Props.-LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex. 1992) (orig. proceeding) (holding that partners' claims of fraudulently inducing partners to invest in the partnership were within scope of clause requiring arbitration of claims "arising out of" or "relating to" the partnership agreement); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S. Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding that the agreement to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof" is easily broad enough to encompass Prima Paint's claim that its execution of the consulting agreement was procured by fraud).

*Rodriguez v. Tex. Leaguer Brewing Co.*, No. 14-17-00872-CV, 2019 WL 2939056, at *6 (Tex. App.—Houston [14th Dist.] July 9, 2019, pet. filed). It is this principle that establishes why the Buyer's claims fall within the Purchase Agreement's arbitration clause.

Here, the Buyer is quite careful to avoid specifically pleading a claim for fraudulent inducement and describing its damages. But the Buyer's petition also does not describe any special damages the Buyer would have suffered had the Purchase Agreement not been entered into and consummated. The usual measures of damages

for fraud require the exchange of value.  In this case, that exchange could occur only when the sale was consummated; thus, an integral part of the Buyer's claim is the existence of an agreement by which the property was transferred to the Buyer.  *See Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) ("Two types of direct damages are available for common-law fraud:   out-of-pocket damages, measured by the difference between the value expended versus the value received, and benefit-of-the-bargain damages, measured by the difference between the value as represented and the value received.").  Further, without proof of the agreement, the Buyer would have a free-floating wrong that did not create a cause of action.[7]

Finally, the petition acknowledges its basis in fraudulent inducement with the allegation that "[b]y failing to provide such disclosures, [the Agents] intended to induce [the Buyer] into purchasing the Property."  We construe the Buyer's petition as an artful attempt to avoid the label of fraudulent inducement, but that attempt fails when we consider the factual allegations underlying that claim.  This conclusion is

---

[7]As the Texas Supreme Court has previously stated,

"Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." Certainly there can be no breach of that duty when one is not induced into a contract.  More significantly, proof that a party relied to its detriment on an alleged misrepresentation is an essential element of a fraud claim.  Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim.  That is, when a party has not incurred a contractual obligation, it has not been induced to do anything.

*Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (footnotes omitted).

35

based on the breadth of the arbitration clause, which includes claims "relating to" the Purchase Agreement and brings the Buyer's claims within the ambit of the arbitration clause.

As we read the Buyer's brief, it makes an argument that only tangentially challenges our conclusion, but we will address it. The Buyer argues that

> [the Agents] still have not provided evidence sufficient to link the claims of their conduct to the sales contract. The agreement covers claims arising under or relating to the "Agreement," not the sales transaction. Without that link, [the Agents'] proposition expands the agreement to allow any person connected with the sale of the Property to invoke the arbitration provision. Under [the Agents'] theory, Harrison would also be able to enforce the arbitration clause because his conduct was "related to" the sale of the Property.

This argument does not challenge the proposition that a fraudulent-inducement claim "relates to" the Purchase Agreement. Further, the argument has a faulty premise. Harrison, the other defendant, has no right to arbitration unless he had a right to enforce the arbitration clause. That failing—not the interrelation of the claims and the clause—forestalls his right to arbitration.

We conclude and hold that the Buyer's claims fall within the scope of the arbitration provision. We therefore sustain the Agents' fourth issue.

**D.    Outcome**

Because we have sustained the Agents' second through fourth issues after concluding that the Buyer is bound by the arbitration provision, that the Real Estate Agents can enforce the arbitration provision, and that the Buyer's claims fall within

the scope of the arbitration provision, we also sustain the Agents' first issue and hold that trial court abused its discretion by denying the Real Estate Agents' motion to compel arbitration.

## VI. Conclusion

Having sustained the Real Estate Agents' four issues, we reverse the trial court's order denying the Real Estate Agents' motion to compel arbitration and render an order granting this motion. Moreover, the case is remanded to the trial court and is ordered stayed pending completion of arbitration. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.021(c), .025(a).

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: December 12, 2019